**POHL CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 700–88 T.**

United States Court of Federal Claims.

Aug. 10, 1993.

Ian M. Comisky, Philadelphia, PA, for plaintiff.

Jay G. Philpott, Jr., Washington, DC, with whom was Acting Asst. Atty. Gen. Michael L. Paup, Mildred L. Seidman, and David Gustafson, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on plaintiff's application for attorney's fees and expenses pursuant to 26 U.S.C. § 7430. For the reasons set forth below, the court grants plaintiff's application in part and denies in part.

## FACTS

Plaintiff, Pohl Corporation, is a Pennsylvania corporation with its principal place of business in Reading, Pennsylvania. It is engaged in the business of trading railroad materials. On May 14, 1982, Pohl filed its 1981 corporate tax return. In April 1985, the Internal Revenue Service (IRS) requested information concerning Line 10 of the 1981 return. On Line 10 of Form 1120, entitled "Other Income," Pohl reported $16,701 of income. Joel Delewski, the preparer of the return, had hand-written "Misc. Income 4,830 Partnership Inc[ome] 11,871" next to the Line 10 entry of $16,-701. The $11,871 consisted of income or loss for various partnerships in which Pohl had invested. However, Pohl had not attached a separate schedule to explain the exact breakdown of the amount reported on Line 10. On April 23, 1985, John Craley of Reinsel & Company, Pohl's accounting firm, orally provided the IRS with a reconciliation of the Line 10 "Partnership Inc[ome]" amount of $11,871.

Because the IRS also questioned Pohl's partnership investments for the reporting years 1978, 1979, and 1980, it sent Pohl "Special Consent Forms" on April 17, 1985. These forms extend the time in which the IRS may assess taxes. Pohl executed consent forms for all years except 1981.

The IRS then issued a Statutory Notice of Deficiency for the 1981 return on May 13, 1985. The notice disallowed losses for three of the partnership investments which were components of the "Partnership Inc[ome]" item, and assessed taxes owed in light of the disallowance. In response to

the notice, Tom Beaver of Reinsel & Company wrote a letter to the IRS Revenue Agent assigned the case. That letter, dated January 31, 1986, enclosed copies of the individual K–1s—reporting a partner's share of the partnership income or loss—for the partnerships, as well as a schedule explaining the Line 10 income. On April 23, 1986, Tom Beaver wrote to the Chief of the Taxpayers Assistance Section of the IRS to ask that the Section contact the Revenue Agent assigned to the case with respect to the 1981 return, as Pohl was attempting to reach an agreement with the IRS on tax years 1978–82 inclusive.

By letter dated May 21, 1986, Mr. Beaver requested an Appeals Office conference for all reporting years then at issue, including 1981, since similar issues existed in all tax years questioned. Inexplicably, the IRS did not grant an Appeals Office conference in 1986, but instead pursued collection of the 1981 assessment: the IRS issued a final Notice of Intention to Levy in November 1986. In response to the notice, Debra Horvat of Reinsel & Company wrote to the IRS and asked that it stop all collection activity. Ms. Horvat also enclosed another copy of Mr. Beaver's January 31, 1986 letter and its attachments, which included a reconciliation of Line 10.

On November 20, 1986, IRS agent "E. Clarke" completed a Request for Adjustment to the Statutory Notice of Deficiency for 1981. On the Request, the agent acknowledged that the IRS had erroneously disallowed deductions which Pohl had not claimed in Line 10 of its 1981 return.

To avoid levy, Pohl paid the 1981 assessment in full. It did so in two parts: it paid $9,443 on May 30, 1986, and $204,500 on December 30, 1986. *Despite full payment of the assessment,* the IRS levied on Pohl's corporate bank account in 1988. Once again, Debra Horvat wrote the IRS—on October 30, 1988—explaining that the levy was invalid since the assessment was not only substantively erroneous, but also had been fully paid.

Pohl filed a refund claim for the 1981 assessment on May 16, 1988. Since the IRS did not consider the refund claim within the six month period provided by law, 26 C.F.R. § 601.106(d)(2)(iii) (1992), Pohl filed suit in this Court on December 8, 1988.[1] Both parties met on April 27, 1989 in an effort to resolve the case; however, they did not reach a settlement at that time. Twenty days prior to this meeting, Pohl's counsel had forwarded a letter to defendant's counsel explaining Pohl's position with regard to Line 10 items reported on the 1981 return.

The court granted defendant two suspensions of proceedings totalling five months between May and September 1989. Defendant requested this time to review the facts of the case and to evaluate the possibility of settlement. On September 13, 1989, the IRS held an Appeals Office conference for all years at issue. The parties did not resolve the issues pertaining to 1981 or any other year at that conference.

Defendant filed its answer to plaintiff's complaint on September 22, 1989. After an October 24, 1989 status conference, the court ordered that the IRS issue no additional statutory notices of deficiency to Pohl without first notifying the court. In violation of this order, the IRS issued statutory notices of deficiency for years other than 1981 on April 4, 1990. As a result, plaintiff was forced to take additional action before the IRS and the United States Tax Court to preserve its opposition to these assessments.

On January 19, 1990, Pohl responded to defendant's first set of interrogatories by again sending a reconciliation of Line 10, and a copy of a November 15, 1989 letter prepared by Joel Delewski which reconciled Line 10.[2] At a June 20, 1990 pre-trial conference before the court, both parties

---

1. At that time, Pohl Corporation employed less than five hundred persons and had a net worth of less than seven million dollars. This information is relevant to the discussion of whether Pohl is a "prevailing party" within the meaning of 26 U.S.C. § 7430 (1988), *infra.*

2. As stated above, Mr. Delewski was the original preparer of the 1981 return.

agreed that the ruling of the court in this case would be binding for 1981 as well as all other years at issue. On August 2, 1990, Pohl sent trial exhibits to the IRS. One of the exhibits was Mr. Beaver's January 31, 1986 letter together with its attachments.

The court conducted trial on August 9 and 10, 1990. After Pohl had submitted its post-trial brief on October 25, 1990, defendant conceded that Pohl was entitled to a full refund of the paid 1981 assessment. Defendant never explained why it required plaintiff to litigate the previously allowed deductions, or why it issued further statutory notices of deficiency in the face of the court's order. On January 10, 1991, and prior to the court's issuance of a trial opinion, defendant moved to suspend proceedings and to compel a stipulation for entry of judgment. Pohl objected, arguing that defendant conceded only to avoid the issuance of an adverse opinion. Such an opinion would collaterally estop defendant from denying plaintiff a refund for assessments made for other reporting years in which partnership income was questioned. The court ordered the parties to submit briefs regarding the jurisdiction of the court to issue a trial opinion after a full concession. On April 30, 1991, the court issued judgment[3] in favor of Pohl, 22 Cl. Ct. 849. The court did not issue a trial opinion.

On July 26, 1991, Pohl filed an application for attorney's fees and expenses pursuant to 26 U.S.C. § 7430 (1988). Between 1991 and 1993, the court granted five separate motions for enlargement of time or suspension of proceedings to enable the parties to negotiate a settlement on this issue. On May 4, 1993, upon the parties' advice that they could not reach settlement, the court issued an order stating that the court would decide the issue of attorney's fees and expenses on plaintiff's application. The court also granted the parties additional time in which to file supplemental memoranda of law in support of their positions.

## DISCUSSION

Section 7430 of the Internal Revenue Code governs the "[a]warding of costs and certain fees" in tax refund cases such as this one. 26 U.S.C. § 7430 (1988). This section provides for an award of costs and fees "[i]n any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest or penalty" imposed under Title 26 of the United States Code. *Id.* § 7430(a).

Under § 7430, the taxpayer must prove eligibility for an award of costs and fees. "[T]he conference agreement provides that the taxpayer ... must carry the burden of proving that the Government's action was not substantially justified." H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. II–802 (1986), *reprinted in* 1986 U.S.C.C.A.N. 4075, 4890. The law with respect to this "burden of proof" was retained in the 1988 amendment to § 7430. H.R.Conf.Rep. No. 1104, 100th Cong., 2d Sess. 226 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4515, 5048, 5286. Pohl Corporation must prove this eligibility by showing that (1) it has exhausted all administrative remedies, 26 U.S.C. § 7430(b)(1); (2) it has not protracted the proceedings, *id.* § 7430(b)(4); (3) the costs it seeks are "reasonable," *id.* § 7430(c)(1) & (2); and (4) it is a "prevailing party," *id.* § 7430(c)(4). To establish that it is a "prevailing party," plaintiff must show that defendant's "position" was not "substantially justified," *id.* § 7430(c)(4)(A)(i); *see also id.* § 7430(c)(7), that it substantially prevailed with respect to the amount of its claim or the significant issues posed, *id.* § 7430(c)(4)(A)(ii), and that it meets certain size and net worth requirements, *id.* § 7430(c)(4)(A)(iii); *see also Moran v. Commissioner*, 88 T.C. 738, 740, 1987 WL 49297 (1987).[4]

---

**3.** The court issued an amended judgment on June 18, 1991 to correct a mistake in the amount of recovery to which plaintiff was entitled.

**4.** Because certain statutory issues are, in effect, threshold issues to other statutory sections, the court will discuss the statutory requirements in an order different than that presented in the statute itself.

## I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Section 7430 provides that a court shall not award costs and fees "unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service." 26 U.S.C. § 7430(b)(1). The court finds that plaintiff has exhausted its administrative remedies.

The IRS may assess a taxpayer either by conducting an examination of the return and issuing a thirty-day letter explaining the source of the return's problem, or by issuing a statutory notice of deficiency to the taxpayer. If the IRS conducts an examination of the return, it sends the taxpayer a copy of the examination report along with a "30–day [assessment] letter." 26 C.F.R. § 601.105(c) (1992). Such a letter explains the remedies available to the taxpayer after assessment, one of which is to request an Appeals Office conference. If the taxpayer requests an Appeals Office conference within thirty days of the issuance of the examination report, a conference will be granted. However, when the statute of limitations for assessment is about to expire, the IRS will not issue a thirty-day letter, but will instead issue a statutory notice of deficiency. *Id.* § 605.-105(f). In the latter situation, the IRS does not make a conference available. *Id.* When the taxpayer files a refund claim, the IRS has six months to review the claim. 26 U.S.C. § 6532 (1988). If the IRS reviews the claim and moves to disallow it, the taxpayer can appeal this action. 26 C.F.R. § 601.105(e); *see id.* § 601.105(c). Alternatively, if the IRS takes no action on the claim, the taxpayer may file a complaint six months after the date of the filing of the refund claim; there is no provision for appeal within the IRS. *Id.* § 601.106(d)(2)(iii).

In the present case, as the statute of limitations period was closing on the IRS's ability to assess allegedly unpaid taxes, the IRS did not issue a thirty-day letter, but a statutory notice of deficiency to plaintiff.

IRS regulations provide an "[e]xception to [the] requirement that [a] party pursue administrative remedies." 26 C.F.R. § 301.7430–1(f) (1992). Section 301.7430–1(f) states that

[a] party's administrative remedies within the Internal Revenue Service are considered exhausted for purposes of [26 U.S.C. §] 7430 if—

....

(3) In the case of a civil action for refund involving a tax matter other than a tax matter described in paragraph (4) [a civil action under 26 U.S.C. §§ 6703, 6694], the party—

....

(ii) Did not receive a preliminary notice of proposed disallowance prior to issuance of a statutory notice of disallowance and the failure to receive such notice was not due to actions of the party....

*Id.* Plaintiff did not receive a preliminary notice (thirty-day letter) before the IRS issued the statutory notice of deficiency and this was not due to Pohl's actions. Therefore, plaintiff is considered to have exhausted its administrative remedies for the purposes of 26 U.S.C. § 7430(b)(1). *Id.* § 301.7430–1.

In any event, plaintiff's accountants requested an Appeals Office conference on May 21, 1986—eight days after the issuance of the Statutory Notice of Deficiency—even though the applicable regulations did not provide for such a remedy. The IRS did not grant an Appeals Office conference at that time.[5] "Consequently an Appeals Office conference was not an administrative remedy available to [plaintiff] within the Internal Revenue Service [and] an Appeals Office conference was not an administrative remedy that [this plaintiff] failed to exhaust." *Minahan v. Commissioner,* 88 T.C. 492, 503, 1987 WL 49279 (1987). Additionally, plaintiff responded to all inquiries that the IRS made of it. In sum, Pohl exhausted all administrative remedies available to it—and then some—

---

**5.** On September 13, 1989, the IRS did hold an Appeals Office conference for 1981 and other years; however, this was after Pohl had filed

suit. The three year delay from the date of plaintiff's request was not the fault of plaintiff.

within the Internal Revenue Service, and has satisfied the requirements of 26 U.S.C. § 7430(b)(1).

## II. PREVAILING PARTY

■ Section 7430 defines "prevailing party" as any party, other than the United States,

(i) which establishes that the position of the United States in the proceeding was not substantially justified,

(ii) which—

(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented, and

(iii) which meets the [timeliness] requirements of the 1st sentence of section 2412(d)(1)(B) of Title 28, United States Code (as in effect on October 22, 1986) except to the extent differing procedures are established by rule of court[,] and meets the [net worth and employee profile] requirements of section 2412(d)(2)(B) of such Title 28 (as so in effect).

26 U.S.C. § 7430(c)(4)(A).

Plaintiff has "substantially prevailed with respect to the amount in controversy," *id.* § 7430(c)(4)(A)(ii)(I), since defendant conceded the full amount of the refund claimed. In addition, defendant has conceded that plaintiff meets the requirements of § 7430(c)(4)(A)(iii), i.e., that plaintiff's application for attorney's fees was timely filed, and that plaintiff had the required net worth and employee profile at the time it filed suit. Thus, the only dispute as to plaintiff's status as a "prevailing party" is whether it has "establishe[d] that the position of the United States in the proceeding was not substantially justified." *Id.* § 7430(c)(4)(A)(i).

Section 7430(c)(7) defines the term "[p]osition of the United States" as

(A) the position taken by the United States in a judicial proceeding to which subsection (a) applies,[6] and

(B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of—

. . . .

(ii) the date of the notice of deficiency.

*Id.* § 7430(c)(7) (footnote added). The court must therefore look to defendant's conduct from May 13, 1985 onward, in both the administrative proceedings and court proceedings.

The Supreme Court has defined the term "substantially justified" as:

"justified in substance or in the main"— that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue. To be "substantially justified" means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve.

*Pierce v. Underwood,* 487 U.S. 552, 565–66, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (citations omitted) (footnote omitted). *Pierce* was an action for fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1986). Section 7430(c)(4)(A)(i) today contains the same operative language as the EAJA. *See* 28 U.S.C. § 2412(d)(1)(A) (1986). Thus, cases such as *Pierce* explaining or defining the EAJA are helpful in understanding § 7430 cases. "Indeed, there are several areas of overlap in which EAJA precedence has direct bearing on the standards used under section 7430. For example, the 'reasonableness' standard is essentially the same [in § 7430] as that used in 28 U.S.C. § 2412." *Lawler v. United States,* 16 Cl. Ct. 53, 55 (1988) (citation omitted). This "reasonableness" standard was the predecessor to the "substantially justified" standard in § 7430. In *Columbus Fruit &*

---

**6.** Section 7430(a) applies to "any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty...."

*Vegetable Coop. Assoc. v. United States*, 8 Cl.Ct. 525, 527–28 (1985), the court found that § 7430's "reasonableness" standard should mean the same as "substantially justified" under the EAJA because both sections shared the same goals.

It is clear to the court that defendant's position during both the administrative and litigation phases of this case was not substantially justified. Pohl Corporation, its accountants, and its attorneys explained and reconciled Line 10 of the 1981 return numerous times. First, on April 23, 1985, John Craley of Reinsel & Company—Pohl's accounting firm—spoke to an IRS agent over the telephone and orally reconciled Line 10. This was the first time that Pohl explained its Line 10 amount to the IRS after filing its return, yet defendant disregards this as reliable information. Defendant claims that this oral information was not subject to penalty for perjury as a return would be, however, the IRS agent did not ask for a written confirmation or affidavit of the figures given. Thus, the IRS had information explaining Pohl's Line 10 entry as early as April 1985. Second, on January 31, 1986, Tom Beaver of Reinsel & Company sent a letter to the IRS revenue agent assigned to the case. Attachments to this letter included a schedule explaining the Line 10 figure and copies of the K–1s for the individual partnership components of the Line 10 item. Defendant claims that the IRS received only the letter and not the attachments at that time; however, the court is satisfied that the IRS received the entire package, even though it might not have been aware of this at the time.[7] Third, in November 1986, Debra Horvat of Reinsel & Company provided the IRS with another copy of Tom Beaver's January 31, 1986 letter and attachments. Ms. Horvat sent this copy along with a letter asking the IRS to stop all collection activity. This was in response to the IRS's issuance of a final notice of intention to levy. Fourth, Pohl filed a refund claim on May 16, 1988. This refund claim explained Pohl's position

concerning Line 10. Fifth, six months later, on December 8, 1988, Pohl filed suit. The complaint outlined the IRS's errors and stated Pohl's position with respect to the partnership income comprising Line 10. Sixth, on April 7, 1989, Pohl's counsel sent another letter to the IRS which detailed Pohl's reporting position. Pohl's counsel sent this letter in anticipation of the April 27, 1989 settlement conference. Seventh, the IRS held an Appeals Office conference on September 13, 1989. This conference covered all years at issue, including 1981. Pohl's counsel again outlined and reviewed Pohl's position on the 1981 return. Eighth, Pohl responded to defendant's first set of interrogatories in January 1990. The responses again explained Pohl's position and included a copy of a November 15, 1989 letter from Joel Delewski reconciling Line 10. Finally, on August 2, 1990, Pohl sent the IRS copies of all trial exhibits and included a third copy of Mr. Beaver's January 31, 1986 letter.

Thus, Pohl explained its reporting position to the IRS on numerous occasions by telephone, letter and in person. Pohl reconciled Line 10 and outlined the IRS's errors. The IRS acknowledged that it had made errors in its statutory notice of deficiency. The IRS was far from reasonable in claiming that Pohl had failed to substantiate 1981 income and loss for its various partnership investments.

In addition, the IRS acted unreasonably toward plaintiff in its other actions. The IRS took almost nine years—from May 14, 1982 when the 1981 return was filed, until January 10, 1991 when defendant conceded error in the assessment—to "discover" that its position was erroneous. By May 1989, when defendant requested a suspension of proceedings before the court, plaintiff had given defendant an explanation of its position or a reconciliation of Line 10 on at least five different occasions. The court granted defendant a total of five months of suspension during which time defendant

---

7. Because the letter itself referred to the "attached schedule" and the "enclosed copies," the IRS was, at the very least, aware that a schedule was intended to be attached. Had the IRS not received the attachments as it claims, it could have simply notified Mr. Beaver that there was no attached schedule and requested another copy.

was to evaluate the facts of the case and the possibility of settlement. However, defendant persevered with the proceedings even though at that time it possessed the same evidence which, after trial, led to its concession. Defendant claims to have conceded only after discovering its error at trial, yet it did not actually concede until trial had been completed and plaintiff had submitted its post-trial brief. The delay is inexcusable.

Moreover, the IRS was unreasonable in levying on Pohl's corporate bank account after Pohl had paid the assessment in full and had filed a refund claim. Additionally, the IRS, on April 4, 1990, issued statutory notices of deficiency for tax years 1978, 1979 and 1980 without notification to the court in violation of a court order. A violation of a court order is *per se* unreasonable.

At the very latest, the IRS knew that its position was at least partially erroneous by November 20, 1986: at that time, the IRS requested an adjustment to the Statutory Notice of Deficiency for 1981 because losses which the IRS had disallowed were not claimed by the taxpayer! Thus, the IRS knew that the amount of the assessment was not correct.

"The mere fact that the United States lost the case does not show that its position in defending the case was not substantially justified." *Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d 1387, 1391 (Fed.Cir.1982). However, defendant's actions along with plaintiff's responses thereto show that defendant's position on its face was not substantially justified. Plaintiff repeatedly provided the IRS with an explanation of its reporting position and a reconciliation of Line 10. Plaintiff also followed the procedural steps necessary to resolve this dispute: it paid the assessment, filed a refund claim, waited the statutory period, and then filed suit. The IRS acted unreasonably in not conceding that plaintiff was correct until the post-trial briefing phase of the proceedings. Thus, the IRS was not "substantially justified" in its position and plaintiff has met the requirements of 26 U.S.C. § 7430(c)(4)(A)(i).

## III. Unreasonably Protracted Proceedings

█ Defendant has asserted that plaintiff unreasonably protracted the litigation proceedings by insisting that the court issue a trial opinion. Both parties submitted briefs on the jurisdiction of the court to issue an opinion after defendant's full concession. Defendant prevailed on its argument that the court did not have jurisdiction to issue an opinion after a concession, and therefore the court did not issue an opinion. Pohl was reasonable in requesting an opinion from the court and in briefing the court on this issue. The 1981 case was to be a test case, used to resolve other reporting years at issue.

Defendant also argued that Pohl protracted proceedings by not affirmatively advising defendant's counsel of Mr. Beaver's January 31, 1986 letter and its attachments. Defendant argues that had it been made aware of the letter, it could have concluded these proceedings at an earlier stage. A brief look at the facts illustrates why the argument is false. Pohl sent copies of the letter to the IRS in January 1986, November 1986, and August 1990. The letter was referred to at trial and discussed by witnesses in their testimony. Pohl did not unreasonably protract the proceedings by not specifically calling defendant's attention to papers already in its possession. In sum, the court finds that plaintiff did not unreasonably protract proceedings, and has satisfied 26 U.S.C. § 7430(b)(4).

To reiterate, plaintiff has proven that it has exhausted all administrative remedies available to it within the IRS, and that it is a prevailing party. Pohl has also successfully rebutted any accusations that it unreasonably protracted the proceedings. Therefore, Pohl is entitled to an award of reasonable costs and fees pursuant to 26 U.S.C. § 7430—including the fees and expenses expended in litigating Pohl's entitlement to fees. *Powell v. Commissioner*, 891 F.2d 1167, 1170–71 (5th Cir.1990). The court next turns to a discussion and deter-

mination of the amount of costs and fees to which plaintiff is entitled.

## IV. AMOUNT OF COSTS AND FEES

"A party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and the need for service, and the reasonable fees to be allowed." *Martin v. United States,* 12 Cl.Ct. 223, 227 (1987) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 429, 433, 441, 103 S.Ct. 1933, 1937, 1939, 1943, 76 L.Ed.2d 40 (1983)), *vacated in part on other grounds,* 852 F.2d 1292 (Fed.Cir.1988).

Defendant describes Pohl's counsel as showing a lack of billing judgment because "there appears to be a charge for every conceivable minute spent on this matter." Section 7430 provides for an award of reasonable costs and fees incurred in connection with the proceedings. Pohl's attorneys are not required to write-off any expenses that have accrued, or to donate their time. The Supreme Court has advised that counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940–41, 76 L.Ed.2d 40 (1983). Pohl's counsel has requested fees for trial counsel in the case, Mr. Ian Comisky and Mr. Edward Foster of Blank, Rome, Comisky & McCauley. Pohl, in its initial fee request, indicated that it was not requesting fees for other associates, partners and paralegals who worked on the case. Thus, this court disallows fees for any Blank, Rome, Comisky & McCauley employees other than Messrs. Comisky and Foster.

■ Defendant also contends that only one attorney was necessary for depositions and possibly two for major hearings and trial. Thus, defendant maintains, the public fisc should not have to pay for both Mr. Comisky's and Mr. Foster's attendance at depositions, hearings and at trial. However, the court notes that defendant had two attorneys working on the entire case, and had three attorneys present at counsel's table during trial. In light of this fact, defendant's contention rings hollow.

■ Defendant asserts that Pohl should not be awarded fees for preparation and attendance at settlement conferences and the Appeals Office conference because years other than 1981 were discussed. This assertion is not persuasive because 1981 was to be a "test case" to resolve issues pertaining to all years in dispute. At the June 20, 1990 pre-trial conference before the court, both parties expressly agreed that the court's decision in the 1981 case would be dispositive of the same issues in all other years questioned. Thus, due to the unique facts in this case, it is reasonable for the court to award fees for preparation for and attendance at conferences during which the 1981 return was discussed, even if reporting years other than 1981 were also discussed.

■ Defendant opposes an award of fees which Pohl incurred in preparing and filing a Tax Court petition for years 1978 through 1980. However, the IRS, in effect, caused Pohl to incur these expenses through its violation of a court order. The 1981 case was to be a test case, binding on all other years at issue. Once the IRS issued the statutory notices of deficiency for 1978, 1979 and 1980, Pohl could no longer wait for the outcome of the 1981 case. Pohl had to take the necessary procedural steps—filing refund claims, waiting the statutory period, and filing suit—to resolve years 1978, 1979, and 1980, or risk the running of the applicable statute of limitations period.

The IRS has pointed out discrepancies in Pohl's exhibits to the application for fees. Pohl's April 16, 1991 invoice from Blank, Rome, Comisky & McCauley, lists fees incurred in March 1991 for preparing a refund claim. Since Pohl filed its refund claim for 1981 on May 16, 1988, these charges cannot apply to the 1981 case. Consequently, the court allows the fees on the April 16, 1991 invoice with the exception of the six items containing the description "prepare refund claim." Another discrepancy appears on the December 19, 1990 invoice. The first item states: "review file

regarding 1985 & 1988 refund claims." This item clearly does not apply to the 1981 case. The court will allow the fees on the December 19, 1990 invoice with the exception of the first item on the invoice. *See* Appendix to this order.

With regard to costs, defendant has challenged the fees paid to Mr. Jack Yampolsky, an expert witness, since his testimony was excluded at trial. However, Mr. Yampolsky, a certified public accountant with Yampolsky, Mandeloff, Silver & Company, assisted in the preparation of a chart that was admitted at trial. Defendant also opposes an award of costs for services billed on an invoice of Yampolsky, Mandeloff, Silver & Company dated September 10, 1990. The invoice is for time that two of Mr. Yampolsky's associates spent working on a scenario and on a report. Defendant argues that these charges are inappropriate to award as costs because the hours were expended days after the trial. However, the details on the invoice do not indicate that these hours were spent preparing *for trial.* On October 25, 1990, Pohl filed its post-trial brief. The hours at issue could have been expended for use in preparing the post-trial brief. Thus, it is not clear, as defendant claims, whether "the above-cited dates are either typographical errors or otherwise erroneous." The court will allow the expenses for Mr. Yampolsky and for Yampolsky, Mandeloff, Silver & Company.

Pohl's counsel has submitted contemporaneous work records which are detailed and specific as to how Messrs. Comisky and Foster spent their time. It was defendant's responsibility to direct the court's attention to any discrepancies found in plaintiff's records, and defendant has done so. The court is satisfied that the expenses claimed are allowable within § 7430. Thus, with the exception of the items specifically disallowed above, Pohl is entitled to an award of all costs and fees requested in its application. The court will also allow all costs and fees requested in plaintiff's two supplemental applications, filed November 4, 1991 and June 9, 1993.

## V. SEVENTY-FIVE DOLLAR STATUTORY LIMIT

■ Section 7430 defines reasonable litigation costs as including

reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate.

26 U.S.C. § 7430(c)(1)(B)(iii).

Pohl asserts that the court should award attorney's fees in excess of the statutory rate of $75 per hour due to the special qualifications that Pohl's two attorneys possess.

In *Pierce*, the Supreme Court expanded on the "special factor" exception. "We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce*, 487 U.S. at 572, 108 S.Ct. at 2554. While Pohl's two attorneys may be, as is claimed, tax specialists, this does not entitle Pohl to a fee in excess of the statutory rate.

Section 7430 applies only to tax cases; therefore most of the applications for attorneys' fees under it would be to pay attorneys who have brought or defended tax cases. Such lawyers presumably all have a certain degree of "tax expertise." To suppose that Congress intended them all to be paid at a higher than $75 an hour rate would allow this "special factor" exception to swallow the $75 an hour rule.

*Cassuto v. Commissioner*, 936 F.2d 736, 743 (2d Cir.1991).

■ Pohl has not proven that its two attorneys have special qualifications other than a "certain degree of tax expertise," thus the court will not exceed the statutory limit. Pohl has also requested a rate higher than $75 per hour as a sanction for the IRS's violation of the court order to not issue statutory notices of deficiency for

years other than 1981. The court denies this request.

## VI. COST OF LIVING ADJUSTMENT

■ Pohl is entitled to a cost of living adjustment (COLA) to the $75 per hour fee award. Courts differ as to what date should mark the starting point of the COLA. The Second Circuit has looked to the legislative histories of the EAJA and § 7430 to find that January 1, 1986 is the starting date for a COLA to § 7430. *Id.* at 742–43.

> Although § 7430 first became effective in 1983, it did not allow for colas until 1986. We believe, therefore, that these adjustments should be calculated as of 1986, not 1983, because § 7430's 1986 amendment, unlike the 1985 EAJA reenactment, did not restore the 1983 § 7430 as if it had not been repealed, but substantially altered the statute's method of awarding and calculating fees.

*Id.* at 743. The court finds that Pohl is entitled to a COLA beginning in 1986.

■ The COLA should be based upon the city where the work was performed. "Local inflation statistics appear to have a more direct impact than national statistics on the costs attorneys face and, hence, [on] the prices they charge." *Chiu v. United States,* 18 Cl.Ct. 567, 569 (1989), *rev'd on other grounds,* 948 F.2d 711 (Fed.Cir.1991). Plaintiff's counsel are located in Philadelphia, Pennsylvania, and plaintiff has submitted figures for a COLA based on the Consumer Price Index (CPI) for Philadelphia. Defendant has not opposed the use of the CPI for Philadelphia, thus the court will use this figure as a basis for calculating the COLA.

■ In footnote 10 of *Chiu,* the Federal Circuit gave guidelines to a court for determining a COLA.

> By holding that a post-performance COLA may not be awarded, we do not mean to preclude the court from adopt-

ing, in an appropriate case, a single midpoint inflation adjustment factor applicable to services performed before and after that midpoint. However, in determining what the amount of that type of COLA adjustment should be, the court must exclude inflation occurring after all services have been performed and reasonably weigh the quantum of hours and inflation factors which are otherwise applicable.

*Chiu v. United States,* 948 F.2d 711, 722 n. 10 (Fed.Cir.1991) (citation omitted). Since Pohl's fees were incurred over a relatively small number of years and the nature of the litigation demanded more attorney hours in years of trial and conferences, a mid-point inflation adjustment would not be appropriate here. The more equitable method is to adjust on a year-by-year basis. Therefore, the court has calculated the COLA as shown in the attached Appendix.

## VII. BILL OF COSTS

In its second supplemental application for attorney's fees and costs, plaintiff asserts that its Renewed Bill of Costs, filed July 1, 1991, is outstanding. In its April 29, 1991 Order, the court awarded costs to plaintiff as prevailing party. Defendant has not contested any of the costs requested in that bill of costs, and the court sees no reason why those costs should not have been paid already. The court has reduced plaintiff's initial request for fees by the amount of $3,989.43, as plaintiff has suggested, to avoid duplicate reimbursement of certain items. The amount requested in the renewed bill of costs, $5,242.33, is awarded as part of the total award. *See* Appendix to this order.

## CONCLUSION

For the above reasons, Pohl is awarded costs and fees in the amount of $187,-016.84. The Clerk of the Court is directed to enter judgment in favor of plaintiff.

IT IS SO ORDERED.

APPENDIX
Schedule of Fees and Costs

| FEES | 1986 | 1987 | 1988 | 1989 | 1990 |
|---|---|---|---|---|---|
| HRS REQUEST | 37 | 78.75 | 171.25 | 232 | 628 |
| HRS DENIED | 0 | 0 | 0 | 0 | 0.25 |
| HRS ALLOWED | 37 | 78.75 | 171.25 | 232 | 627.75 |
| RATE/HR * | $75 | $82.58 | $86.55 | $86.55 | $91.62 |
| TOTAL FEES | $2,775.00 | $6,503.18 | $14,821.69 | $20,079.60 | $57,514.46 |

* $75 per hour with COLA beginning in 1986 based on Philadelphia, PA CPI

| FEES | 1991 | 1992 | 1993 | TOTAL |
|---|---|---|---|---|
| HRS REQUEST | 151.25 | 74.43 | 44.6 | 1417.3 |
| HRS DENIED | 5.75 | 0 | 0 | 6.00 |
| HRS ALLOWED | 145.5 | 74.45 | 44.6 | 1411.3 |
| RATE/HR * | $95.68 | $98.64 | $99.88 | |
| TOTAL FEES | $13,921.44 | $7343.75 | $4454.65 | $127,413.77 |

* $75 per hour with COLA beginning in 1986 based on Philadelphia, PA CPI

| COSTS | FORM REQUESTED | DATE REQUESTED | AMOUNT REQUESTED | AMOUNT ALLOWED |
|---|---|---|---|---|
| | RENEWED BILL OF COSTS | JULY 1, 1991 | $5,242.23 | $5,242.23 |
| | INITIAL RE-QUEST/MOTION FOR FEES | JULY 26, 1991 | $49,241.36 | $49,241.36 |
| | FIRST SUPPLE-MENT TO MOTION FOR FEES | NOVEMBER 4, 1991 | $2,443.33 | $2,443.33 |
| | SECOND SUPPLE-MENT TO MOTION FOR FEES (covering period 9/91–4/93) | JUNE 9, 1993 | $2,326.15 | $2,326.15 |
| | SECOND SUPPLE-MENT TO MOTION FOR FEES (covering period 5/93–6/93) | JUNE 9, 1993 | $350.00 | $350.00 |
| TOTAL | | | $59,603.07 | $59,603.07 |

| | |
|---|---|
| TOTAL FEES | $127,413.77 |
| TOTAL COSTS | $59,603.07 |
| TOTAL AWARD | $187,016.84 |