THE CHRISTIAN COALITION
INTERNATIONAL,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. Civ.A. 2:00CV136.

United States District Court,
E.D. Virginia,
Norfolk Division.

March 1, 2001.

Colby M. May, The American Center for Law and Justice, Washington, DC, John George Stepanovich, The American Center for Law and Justice, Virginia Beach, VA, Alan P. Dye, James Bopp, Jr., Webster, Chamberlain & Bean, Washington, DC, for plaintiff.

Gregory David Stefan, United States Attorney's Office, Norfolk, VA, for defendant.

438

## ORDER

MORGAN, District Judge.

### PROCEDURAL HISTORY

This matter comes before the Court on The Christian Coalition International's Petition for Attorney's Fees and Costs related to its litigation against the Internal Revenue Service ("IRS").

On February 25, 2000, The Christian Coalition International ("Plaintiff"), filed a complaint against the United States challenging the IRS's refusal to grant the Plaintiff tax-exempt status under 26 U.S.C. § 501(c)(4) of the Internal Revenue Code. Specifically, the Plaintiff asked for "[j]udgment that the Petitioner Christian Coalition was exempt under § 501(c)(4) of the Internal Revenue Code for 1990, was not liable for any tax for 1990, and is entitled to a refund of any tax paid for 1990." (Compl. at ¶ 59.) Plaintiff further asked for damages in the amount of $169.26, plus interest and costs.

After the initiation of the lawsuit, the IRS agreed to refund $169.26 plus interest to the Plaintiff, which represented the amount of tax overpaid. On April 28, 2000, the IRS filed a motion to dismiss, claiming that its agreement to remit the full amount in controversy rendered the case moot. The Plaintiff responded that an agreement to tender payment in the amount of damages pled did not moot the action because the IRS had not conceded the merits of the suit, namely that the Plaintiff qualified as a § 501(c)(4) organization for the 1990 tax year.

The Court held a hearing on that motion on July 25, 2000, at which time the IRS admitted that the Plaintiff qualified as a § 501(c)(4) organization for the 1990 tax year. That concession resolved the only remaining issue, thus rendering the case moot. The parties endorsed a consent order that resulted in the dismissal of the case as moot. This motion follows.

### OPINION

■ A party bringing suit against the United States over the determination, collection, or refund of any tax, interest, or penalty may be awarded reasonable litigation fees and costs associated with pursuing that action. 26 U.S.C. § 7430. To raise a successful claim for litigation fees and costs, a party must demonstrate that it: (1) exhausted all administrative remedies prior to filing the suit; (2) did not protract the litigation; (3) was the prevailing party; and (4) only claims reasonable costs. *Pohl Corp. v. United States*, 29 Fed.Cl. 66, 69 (1993). The IRS does not contend that the Plaintiff failed to meet the exhaustion requirement or unnecessarily protracted or delayed the course of the litigation. The two disputed issues are whether the Plaintiff prevailed in the litigation and whether the fees and expenses claimed are reasonable.

### A. *Prevailing Party*

■ To qualify as a prevailing party, the Plaintiff must show the following: (1) the IRS's position in the proceeding was not substantially justified; (2) the Plaintiff substantially prevailed in the suit; and (3) the Plaintiff satisfied timeliness and net worth requirements. 26 U.S.C. § 7430(c)(4)(A); *Pohl*, 29 Fed.Cl. at 71. The IRS, having conceded its position during the oral arguments on the Motion to Dismiss, does not now contend that its position was substantially justified. Further, the IRS does not question the satisfaction of the timeliness and net worth requirements. It only challenges the Plaintiff's representation that the Plaintiff substantially prevailed in the litigation.

■ A "prevailing party" is defined in § 7430(c)(4) as any party who has "substantially prevailed with respect to the amount in controversy, or ... the most significant issue or set of issues presented." In cases raising several issues, courts may consider each phase or issue of the litigation discretely to determine whether the Plaintiff is entitled to recover

expenses incurred in pursuing that issue or litigating that phase. *Ragan v. Commissioner of Internal Revenue*, 135 F.3d 329 (5th Cir.1998).

■ The underlying case resulted in the filing of a Consent Order, endorsed by the IRS, acknowledging that the Plaintiff "qualifies as a § 501(c)(4) organization for the 1990 tax year" and is entitled to a refund of $169.26. (Agreed Order Sept. 7, 2000.) The Plaintiff interprets the Consent Order as a complete victory. The Complaint, according to the Plaintiff, alleges that the Plaintiff was wrongfully denied recognition as a § 501(c)(4) organization in the 1990 tax year, and therefore, overpaid taxes by $169.26. The IRS, while agreeing that the Plaintiff raised these issues in the litigation, challenges the Plaintiff's classification of these issues as "significant."

The IRS offers a much broader interpretation of the scope of the case. The IRS reads the Complaint as seeking declaratory judgment that the Plaintiff qualifies as a § 501(c)(4) corporation and must be taxed in accordance with that provision for the tax years following 1990. Because a declaratory judgment action, by its nature, necessarily implicates the Plaintiff's tax liability in subsequent tax years, the IRS maintains that the Complaint targets the 1990 tax year and six subsequent tax years. The Consent Order only reaches one tax year out of seven, and thus, the IRS posits that the Plaintiff prevailed on a minor issue and is only entitled to recover the expenses associated with litigating the 1990 tax year claim.

The starting point for identifying the issues presented for litigation is the face of the Complaint. In the "Introduction to the Complaint," the Plaintiff identifies this action as one seeking "a refund of income taxes it paid in 1990" resulting from the Internal Revenue Service "improperly den[ying] the Christian Coalition tax-exempt status under § 501(c)(4)." (Compl. at ¶ 1.) Later in the Complaint, after listing the alleged constitutional deficiencies with § 501(c)(4) and other legal theories of

relief, the Plaintiff claims that "during the 1990 calendar year, the Christian Coalition was, or should have been considered an exempt organization under § 501(c)(4), and as such, was not subject to the assessment and collection of taxes on its income *for that year*." (Id. at ¶ 57) (emphasis added). The Complaint concludes with a prayer for relief asking for "[j]udgment that the Plaintiff Christian Coalition was exempt under § 501(c)(4) of the Internal Revenue Code for 1990[and] was not liable for any tax for 1990 ..." (Id. at ¶ 59.) It further seeks a "refund of any tax paid for 1990, and ... judgment against the Defendant in the amount of $169.26...." (Id. at ¶ 60).

Throughout the fifteen page Complaint, there is only one reference to the Plaintiff's tax liability in the years following 1990: "[A] favorable decision by this Court on this refund issue will preclude the Internal Revenue Service from seeking taxes from the Christian Coalition for following years." (Id. at ¶ 1). The IRS argues that this language is evidence of an "unequivocal asserti[ion] that [the Plaintiff] intended to use the 1990 tax refund suit as a means of resolving its tax-exempt status for years after 1990." (Defs.' Resp. to Pet. for Atty.'s' Fees and Costs at 6.)

This statement does not add a cause of action with respect to the Plaintiff's tax liability for every tax year between 1990 and 1996. Placed in the "Introduction to the Complaint," the language apprises the IRS and the Court of the potential import of this case. The body of the Complaint and the "Prayer for Relief" both target the 1990 tax year as the subject of the action and seek damages resulting from the additional tax liability imposed in that year. At no place in the Complaint does the Plaintiff seek damages for excessive tax liability in subsequent tax years or equitable relief for being unjustly denied the § 501(c)(4) exemption in any subsequent tax year.

Had the Plaintiff intended to initiate a challenge to its tax liability for the years

following 1990, it could have articulated those claims in the body of the Complaint and could have sought damages for taxes overpaid in other years, if applicable. Considered in the context of the entire Complaint, this sentence is nothing more than the Plaintiff urging the Court to issue a favorable ruling that might have a preclusive effect, either legally or practically, for subsequent tax years. Additionally, the Plaintiff's response to the IRS's motion to dismiss unequivocally stated that this case was not a request for a declaratory judgment and explained that the statement in the "Introduction to the Complaint" was "merely [a] suggest[ion] that a favorable decision by this Court on the refund issue might preclude the [IRS] from seeking taxes from the Coalition for following tax years." (Pl.'s Resp. to Mot. to Dismiss at 3). Nothing in the responsive brief suggests otherwise. Indeed, had the other tax years been placed in issue, the case could not have been dismissed as moot upon the IRS conceding the Plaintiff's tax status for the 1990 tax year, for the Plaintiff's tax liability in the subsequent years would have remained unresolved. Actually, as the IRS itself points out, there was no allegation or proffer that the Plaintiff had standing to challenge years subsequent to 1990, as its administrative remedies had apparently not been exhausted. It is, therefore, specious for the IRS to argue that it moved the Court to dismiss the case as moot when it believed that only one seventh of the issues had been resolved. The more plausible motivation behind its motion to dismiss as moot was that the IRS knew the Complaint targeted only one year, and it wished to minimize the precedential value of a ruling favorable to the Plaintiff.

The IRS now confounds the issues of the scope of the case and the effect of the opinion. The scope of a case is defined by the issues presented in the complaint, while the effect of a case is measured by the legal and practical results following a ruling on the issues. The practical and legal effects of a decision do not enlarge the scope of a case. The Plaintiff's tax liability for the 1990 tax year and the amount of the refund for overpaid taxes in that year are the two issues presented in this case. Had the IRS not conceded these issues, a favorable ruling might have affected the Plaintiff's future tax liability by one of three means: (1) the Court could find § 501(c)(4) unconstitutional; (2) the Court could find that the Plaintiff qualifies as a § 501(c)(4) organization in general, rather than only in the 1990 tax year; or (3) the Court could find that the Plaintiff qualifies as a § 501(c)(4) organization in the 1990 tax year and the Plaintiff could rely upon the legal theory of collateral estoppel or the practicalities of the result to prevent the IRS from denying the Plaintiff that status in subsequent tax years. By conceding, the IRS probably eliminated the preclusive effect of means (1) and (2). None of these potential effects expand on or add new issues to the scope of the case. The prevailing party analysis focuses solely on success on the issues within the scope of the case; it is not measured by the possible effect of the outcome on future issues.

Even if the Court factored the potential reach of its ruling into its definition of the scope of the case, the IRS's position would not be tenable. In making its argument, the IRS overlooks the fact that it is directly responsible for the limited impact of this litigation. The IRS conceded that the Plaintiff was entitled to a $169.26 refund and then agreed that the Plaintiff qualified as a § 501(c)(4) organization for the 1990 tax year. Because these were the only two issues presented in the case, once the IRS made the second concession, the case became moot. A moot case, by definition, has no remaining issues for the parties to argue or the court to decide. The Plaintiff could no longer attack the constitutionality of § 501(c)(4), nor could the Plaintiff seek a broader-based ruling on its tax status through this proceeding. The failure of the Plaintiff to procure a ruling on those issues was not through lack of effort.

During the hearing on the Motion to Dismiss, the Plaintiff sought to argue the merits of the constitutional issue and its tax status until the Court explained that its jurisdiction ended upon entry of the Consent Order. Thus, any opinion issued on matters beyond the scope of the case would have been advisory. By calculating its concession so as to result in a dismissal of the action as moot, the IRS removed the broader issues from consideration by the Court.

As stated, the Plaintiff prevailed on two issues: tax liability for the 1990 tax year and the amount of the refund. The IRS, by contrast, did not prevail on any issue. The Plaintiff could not prevail on an issue on which the Court was powerless to decide. Accordingly, the Court **FINDS** that the Plaintiff prevailed on the only substantial issues in the litigation and recovered the full amount in controversy, and therefore is the prevailing party in this action.

## B. *Reasonableness of Costs*

■ Prevailing parties are only entitled to reasonable litigation and administrative costs that are necessary for the preparation of the case. The IRS claims that spending $60,000.00 to prosecute a tax refund suit seeking $169.26 is excessive. Had the amount in controversy been the only issue, the IRS's position would be unassailable. The fee, according to the IRS, "represents a level of effort clearly intended to resolve plaintiff's tax-exempt status for 1990, and for years after 1990." (Def.s' Resp. to Pet. for Att'ys' Fees and Costs at 9) (emphasis in original omitted). Because the Consent Order did not address subsequent tax years, the IRS creatively argues for a reduction of the litigation fees on a proportionate basis to $8,500.00 (1/7 of the fees sought).

The Plaintiff mounted, *inter alia*, a constitutional challenge to § 501(c)(4), an issue of first impression. Preparation for a landmark case requires extensive research and analysis, especially when faced by an opponent with unlimited resources. If successful, the Plaintiff and other similarly situated organizations could have received tax benefits for at least seven years, presumably at considerable cost to the United States in lost revenue. An unfavorable ruling would have dealt a devastating blow to the Plaintiff, who for practical reasons may not have been able to claim entitlement to the § 501(c)(4) exemption in any year subsequent to 1990. The uncertainty of the outcome on a novel issue combined with the potential costs to both sides justified meticulous preparation to achieve a strong posture at trial or for negotiating purposes. Thorough preparation is not inexpensive. The Plaintiff had tried for almost ten years to convince the IRS that it was entitled to § 501(c)(4) status. Having not received a concession from the IRS after nearly a decade of requests, the Plaintiff had no reason to suspect that the IRS would concede its position at the pretrial stage of the litigation. A party cannot abruptly make a strategic concession that results in the dismissal of the case as moot and then complain of its opponent's costs incurred in preparation.

The IRS's formula for apportioning the expenses might be properly applied in this case if the Plaintiff brought suit for seven tax years and only prevailed upon one such year. Nevertheless, as discussed, *supra*, the Complaint was limited to the Plaintiff's tax exempt status for the 1990 tax year. The only legally preclusive effect this Consent Order may have on the Plaintiff's tax liability is its potential use as collateral estoppel to prevent the IRS from asserting that the Plaintiff does not qualify as a § 501(c)(4) organization in subsequent tax years. The fact that the collateral estoppel doctrine may apply in a future tax status proceeding or the fact that the practicalities of the situation persuade the IRS to abandon its challenge to the Plaintiff's tax exempt status are evidence of the potential importance of this litigation and further justify the costs expended by the Plaintiff in preparing its case. Accordingly, the Court **FINDS** that the Plaintiff is

**442**

entitled to receive the entire amount of fees and costs incurred in prosecuting its case if the total fees and costs are otherwise reasonable.

The IRS failed to challenge the reasonableness of any of the Plaintiff's itemized fees and costs on other grounds. The Court, therefore, **FINDS** that the itemized list of fees and costs submitted by the Plaintiff relate to the issue of the Plaintiff's refund and tax exempt status in 1990 and the potentially favorable or unfavorable preclusive effect of a ruling upon the same and are, thus, reasonable.

CONCLUSION

Having found that the Plaintiff exhausted all administrative remedies prior to filing the suit, did not protract the litigation, prevailed in the case, and claims otherwise reasonable fees and costs, the Court hereby **GRANTS** the Petition for Attorneys' Fees and Costs. Judgment for Plaintiff against the United States of America is hereby **GRANTED** in the amount of fifty-eight thousand, nine hundred forty dollars and ninety-six cents ($58,940.96), inclusive of costs.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED.**