T.C. Memo. 1997-157


UNITED STATES TAX COURT


LAURA E. AUSTIN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RICHARD ALAN HASHIMOTO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 15710-94, 16009-94.    Filed March 31, 1997.


Daniel L. Britt, Jr., for petitioner in docket No. 15710-94.

Richard A. Hashimoto, pro se.[1]

Clinton M. Fried, for respondent.

_____

[1]    Daniel L. Britt, Jr. (Britt), represented Laura Austin (petitioner) at the trial of this case.  Britt withdrew as counsel to petitioner on Oct. 2, 1996, before petitioner, acting pro se, moved for an award of attorney's fees.  Alan Hashimoto had legal representation for filing his petition to the Tax Court; however, he appeared at trial pro se.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, Judge:  These cases are before the Court on Laura Austin's (petitioner) and Richard Hashimoto's (Hashimoto) motion for administrative and litigation costs pursuant to section 7430 and Rule 231, filed on November 27, 1996.[2]  Neither party has requested a hearing on petitioners' motion.  Accordingly, we rule on petitioners' motion without a hearing, based on the parties' submissions and the existing record.  Rule 232(a)(1).  These cases were consolidated for purposes of trial, briefing, and opinion.  Rule 141(a).

After concessions by the parties, the issues for decision are:  (1) Whether petitioners are the prevailing parties in the underlying tax case within the meaning of section 7430(c)(4).  We

_____

[2]     Section references are to the Internal Revenue Code in effect for the year in issue.  References to section 7430 in this opinion are to that section as amended by sec. 1551 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2752 (effective for proceedings commenced after Dec. 31, 1985) and by sec. 6239(a) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3743-3747 (effective with respect to proceedings commenced after Nov. 10, 1988).  Section 7430 was amended most recently by the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 701, 110 Stat. 1452, 1463-1464 (1996), effective with respect to proceedings commenced after July 30, 1996.  The amendments to the section shift to the Commissioner the burden of proving whether the position of the United States was substantially justified (sec. 7430(c)(4)(B)), and changed the hourly rate for attorney's fees to $110 (sec. 7430(c)(1)(B)(iii)).  A judicial proceeding is commenced in this Court with the filing of a petition.  Rule 20(a).  Petitioners filed their petition on June 3, 1994, thus these changes do not apply here.  All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  All dollar amounts are rounded to the nearest dollar, unless otherwise indicated.

hold petitioner is, to the extent set out below. (2) Whether the amounts of administrative and litigation costs claimed by petitioners are reasonable, within the meaning of section 7430(c)(1). We hold that in part they are not and adjust the amounts as provided below.

FINDINGS OF FACT

During 1990, the year at issue, petitioner and Hashimoto were wife and husband, and filed a joint Federal income tax return (Form 1040) for that year. At the time the petition in this case was filed, petitioner and Hashimoto were divorced and petitioners resided in Marietta, Georgia.

During the year at issue, petitioner was the sole shareholder and president of Associated Services of Accountable Professionals, Ltd. (ASAP), in addition to being a licensed nurse and an attorney. Hashimoto has 2 years of college education and previously was engaged with petitioner in other business enterprises. Although Hashimoto was the corporate secretary of ASAP, his duties were mainly moving furniture, changing locks, and other maintenance work for which he was paid by the hour.

ASAP was incorporated in 1986 under the laws of the State of Georgia, and elected to be an S corporation on March 15, 1989. ASAP is in the business of providing nurses to hospitals and other health care facilities (the clients) at an agreed upon hourly rate. After the nurses have worked their shifts for the clients, ASAP pays the nurses, and bills the clients at the

contracted rate. The clients usually pay ASAP within 30 days after they receive the bills. ASAP has no inventory, has never had gross receipts that exceeded $5 million, and has always used the cash method of accounting.

Respondent issued petitioners a notice of deficiency on June 3, 1994, reflecting her determination that they were liable for an $85,835 deficiency in their 1990 Federal income tax and a $17,167 penalty under section 6662(a). Prior to issuing the notice of deficiency, respondent's revenue agent, Mr. Willie Wimbish, conducted an examination of ASAP and had several interviews with petitioner and her accountant, Mr. Currie. After the examination, the revenue agent proposed the deficiency in petitioners' 1990 income tax, and prepared a Form 886-A (Explanation of Items) to explain the proposed adjustments. The agent's explanation included the adjustments, along with a statement of facts, law, and petitioners' position and the agent's conclusion as to each item of adjustment. The revenue agent's report provided the legal and factual bases for the issuance of the notice of deficiency.

The adjustments in the notice of deficiency were primarily attributable to respondent's determination that ASAP's use of the cash method of accounting did not produce a clear reflection of income (the method of accounting issue). Respondent determined that the proper method of accounting was the accrual method, and using that method respondent increased ASAP's taxable income for

1990 by $246,536. This adjustment flowed through to petitioner as ASAP's sole shareholder, producing a corresponding increase in petitioners' income for that year. Respondent also disallowed two items petitioners claimed as deductions, a $26,676 deduction for computer software research and development costs (the research and development issue), and a $14,842 deduction for business-related travel expenses (the travel expense issue).

Petitioners filed the petition in docket number 15710-94 on August 31, 1994, and respondent filed her answer on September 26, 1994. Hashimoto filed a separate petition in docket number 16009-94 on September 6, 1994, as an innocent spouse, and respondent's answer to Hashimoto's petition was filed on October 24, 1994. On November 10, 1994, respondent's motion to dismiss Hashimoto from the original case, and retitle the cases in their separate names was granted. On March 17, 1995, the attorney for Hashimoto, D. Robert Autrey, Jr. (Autrey), moved to withdraw; we granted Autrey's motion on March 22, 1995, and Hashimoto proceeded pro se. Both cases were calendared for trial on May 1, 1995; however, upon consideration that all of the cases called during the trial session required more time than was available, they were generally continued. The cases were next calendared for trial on January 29, 1996. On January 17, 1996, respondent moved to consolidate the cases for trial, briefing, and opinion. We granted respondent's motion. On the scheduled day of trial, petitioner asked for a continuance because of complications due

to the recent death of her grandmother and the sudden request by her attorney, David L. Britt, Jr. (Britt), to withdraw due to his ill health. By February, Britt had recovered sufficiently to resume representation of petitioner, and this consolidated case came to trial in Atlanta, Georgia on February 13, 1996. Shortly before trial, however, respondent conceded the computer software issue, and petitioners conceded the travel expense issue. Thus, the only issues remaining for decision at trial were the method of accounting issue; whether the addition to tax under section 6662(a) should attach; and, whether Hashimoto was entitled to innocent spouse relief pursuant to section 6013(e).

On September 16, 1996, Britt moved to withdraw as counsel for petitioner. We granted Britt's motion on October 2, 1996, and petitioner proceeded pro se.

On November 27, 1996, the parties filed a stipulation of settlement. In the settlement, respondent conceded the method of accounting issue and the additions to tax under section 6662(a), and Hashimoto conceded that he was not an innocent spouse under section 6013(e). The parties stipulated that the 1990 deficiency is $4,898, which is attributable to petitioners' concession of deductions for travel and entertainment expenses.

Accordingly, the parties settled all issues in the case other than litigation and administrative costs. On November 27, 1996, petitioners timely moved for an award of reasonable administrative and litigation costs. Rule 231(a)(2)(C).

OPINION

A taxpayer who substantially prevails in an administrative or court proceeding may be awarded a judgment for reasonable costs incurred in such proceedings. Sec. 7430(a)(1) and (2).

Issue 1. Whether Petitioners Are the Prevailing Parties

For this Court to award reasonable administrative and litigation costs under section 7430, several requirements must be met. The record must show that: (1) The moving party did not unreasonably protract the administrative proceeding or the proceeding in this Court. Sec. 7430(b)(4). Based upon the entire record, we find that petitioner did not unreasonably protract the proceedings. (2) The moving party exhausted any administrative remedies available to him or her in the Internal Revenue Service. Sec. 7430(b)(1).[3] Based upon the record, we find that petitioner has met this requirement. (3) The moving party was the prevailing party. Sec. 7430(a). As discussed below, we find petitioner has met this requirement.

Generally, a taxpayer considered to be a prevailing party in a civil tax proceeding may be awarded a judgment for reasonable administrative and litigation costs incurred in that proceeding. Sec. 7430(a)(1) and (2). A taxpayer must satisfy several conjunctive requirements to be deemed a prevailing party. Sec. 7430(c). The taxpayer must establish: (1) That the position of

_____

[3] This requirement applies only to a judgment for an award of reasonable litigation costs. Sec. 7430(b)(1).

the United States in the civil proceeding was not substantially justified.  Sec. 7430(c)(4)(A)(i).  (2) The taxpayer substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented.  Sec. 7430(c)(4)(A)(ii).  (3) The taxpayer must either be an individual whose net worth does not exceed $2 million, or an owner of an unincorporated business, or any partnership, corporation, etc., the net worth of which does not exceed $7 million, at the time the petition was filed.  Sec. 7430(c)(4)(A)(iii); 28 U.S.C. sec. 2412(d)(2)(B) (1988).

A taxpayer has the burden of proving that it meets each requirement before we may order an award of costs under section 7430.  Rule 230(e); Gantner v. Commissioner, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990).

In her notice of deficiency, respondent determined a deficiency of $85,835, which was largely attributable to her determination that ASAP's use of the cash method of accounting did not clearly reflect income.  In the stipulated settlement, respondent conceded the method of accounting issue, and the deficiency was adjusted to $4,898, which is attributable to petitioners' concession of deductions for travel and entertainment expenses.  Thus, it is clear from the stipulated settlement in this case that petitioners have substantially prevailed on both the amount in controversy and the most significant issue.  In addition, we are satisfied, based upon

petitioners' submissions to this Court, that their net worth was less than $2 million when their petition was filed. Rule 231(b)(5). Thus, the only issue remaining for decision is whether the position of the United States in the administrative and court proceedings was not substantially justified. <u>Position of the United States Not Substantially Justified</u>

To recover administrative and litigation costs, the taxpayer must establish that the position of the United States was not substantially justified both in administrative and court proceedings. <u>Huffman v. Commissioner</u>, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-144. A position is not substantially justified in law if legal precedent does not substantially support the Commissioner's position given the facts available to the Commissioner. <u>Coastal Petroleum Refiners, Inc. v. Commissioner</u>, 94 T.C. 685, 688 (1990).

In deciding this issue, we must identify the point in time at which the United States is first considered to have taken a position, and then decide whether the position taken from that point forward was not substantially justified. The "not substantially justified" standard is applied as of the separate dates that respondent took a position in the administrative proceedings as distinguished from the proceedings in this Court. Sec. 7430(c)(7)(A) and (B); <u>Han v. Commissioner</u>, T.C. Memo. 1993-386. The administrative position of respondent means the

position taken in the administrative proceedings as of the earlier of the date of receipt of the appeals decision by the taxpayer or the date of the notice of deficiency. Sec. 7430(c)(7)(B). Section 7430(c)(5) defines administrative proceeding as any procedure or other action before the Internal Revenue Service. In this case respondent took a position in the administrative proceeding as of June 3, 1994, the date of the notice of deficiency was issued.[4] See sec. 7430(c)(7)(B)(ii).

The position taken by the United States, for purposes of litigation costs, refers to the position of the United States in a judicial proceeding. Sec. 7430(c)(7)(A). Respondent took positions in the judicial proceedings herein on the dates respondent filed her answers; i.e., September 26, 1994, in the first docket and October 24, 1994, in the second. Huffman v. Commissioner, supra. Although ordinarily the reasonableness of each of those positions is considered separately to allow respondent to change her position, Huffman v. Commissioner, supra at 1144-1147, it appears in this case that respondent took the same positions in both the notice of deficiency and the answers. More specifically, respondent's position was that petitioners overstated deductions for travel and entertainment, overstated

---

[4]     The record does not show that a notice of decision of the IRS Appeals Office was ever issued or received by petitioners prior to the date of the notice of deficiency. Therefore, respondent is considered to have taken a position in the administrative proceedings on the date the notice of deficiency was issued.

deductions for research and development of computer software, and most significantly, that ASAP's use of the cash method of accounting did not yield a clear reflection of income.

Whether respondent's position was not substantially justified turns on a finding of reasonableness, based upon all the facts and circumstances, as well as legal precedents relating to the case. Pierce v. Underwood, 487 U.S. 552 (1988); Coastal Petroleum Refiners, Inc. v. Commissioner, supra at 694-695; Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, supra at 565; Powers v. Commissioner, 100 T.C. 457, 470-471 (1993). A position that merely possesses enough merit to avoid sanctions for frivolousness will not satisfy this standard; rather it must have a "reasonable basis both in law and fact." Pierce v. Underwood, supra at 564-565. A position is not substantially justified in law if legal precedent does not substantially support the Commissioner's position given the facts available to the Commissioner. Coastal Petroleum Refiners, Inc. v. Commissioner, supra at 688. The Commissioner cannot escape an award for costs pursuant to section 7430 simply because a case presents a question of fact. Minahan v. Commissioner, 88 T.C. 492, 500-502 (1987).

The fact that respondent eventually loses or concedes the case is not determinative as to whether the taxpayer is entitled to an award of administrative or litigation costs. Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Wasie v. Commissioner, 86 T.C. 962, 968-969 (1986). It remains, however, a relevant factor to consider in determining the degree of the Commissioner's justification. Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Powers v. Commissioner, supra at 470, 472.

Petitioner has the burden of establishing that respondent's position was not substantially justified. Rule 232(e); Dixson Intl. Serv. Corp. v. Commissioner, 94 T.C. 708, 715 (1990). For petitioners to prevail, they must show that respondent's position, in fact as well as in law, was not justified to a degree that could satisfy a reasonable person. The reasonableness of respondent's position and conduct necessarily requires considering what respondent knew at the time. Cf. Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987); DeVenney v. Commissioner, supra. Thus, in determining whether respondent acted reasonably, this Court must "consider the basis for respondent's legal position and the manner in which the position was maintained." Wasie v. Commissioner, supra at 969.

In some cases courts have adopted an issue-by-issue approach to section 7430, apportioning the requested awards between those issues for which the respondent was, and those issues for which respondent was not, substantially justified. See Powers v.

Commissioner, 51 F.3d 34, 35 (5th Cir. 1995); Swanson v.

Commissioner, 106 T.C. 76, 102 (1996).  We follow that approach

here and separately discuss whether respondent's position on each

issue she conceded was substantially justified.

The Method of Accounting Issue

Respondent concedes that ASAP is a S corporation that is

engaged in a service business, has never had gross receipts in

excess of $5 million, and has always used the cash method of

accounting.  However, in support of her notice of deficiency,

respondent argues that ASAP's use of the cash method of

accounting does not produce a clear reflection of income, because

ASAP accounts for the wages it pays the nurses as a current

deduction, but does not take into income the payments from its

clients until they are received.  According to respondent, the

difference in time of when ASAP takes the current deduction for

the wages expense and the subsequent revenue into income produces

a distortion in its reported income.  As evidence that ASAP's

method does not produce a clear reflection of income, respondent

determined that under the accrual method ASAP's income for 1990

would be increased by $246,536.  Finally, respondent contends

that if petitioners are to establish that respondent has abused

her discretion in determining that ASAP's method of accounting

did not produce a clear reflection of income, petitioners must

demonstrate substantially identical results between ASAP's method

of accounting and the method selected by the Commissioner.

Petitioners contend that respondent's position on the method of accounting issue was not reasonable as a matter of law or fact. In support of their contentions, petitioners allege that ASAP is not expressly prevented from the use of the cash method of accounting by any section of the Internal Revenue Code (the Code) or regulations. In support of their position, petitioners cite section 446(c)(1) which provides that a taxpayer may compute taxable income under the cash receipts and disbursements method of accounting. In addition, petitioners contend that respondent's application of the substantial-identity-of-results test to support her determination is an abuse of discretion.

The issue we must decide is whether the Commissioner's determination that ASAP report its income on the accrual method of accounting constitutes an abuse of discretion. In reviewing the Commissioner's determination that the taxpayer's method of accounting does not clearly reflect income, the function of this Court is to determine whether there was an adequate basis in law for the Commissioner's conclusion. RCA Corp. v. United States, 664 F.2d 881, 886 (2d Cir. 1981). The Commissioner is granted broad discretion in determining whether a taxpayer's use of an accounting method clearly reflects income. Sec. 446(b); United States v. Catto, 384 U.S. 102, 114 & n.22 (1966), rehearing denied 384 U.S. 981 (1966); Commissioner v. Hansen, 360 U.S. 446, 467 & n.12 (1959); Lucas v. Am. Code Co., 280 U.S. 445, 449 (1930). No method of accounting is acceptable unless, in the

opinion of the Commissioner, it clearly reflects income.  Sec. 1.446-1(a)(2), Income Tax Regs.  Thus, a prerequisite to the Commissioner's requirement that a taxpayer change its present method of accounting is a determination that the method used by the taxpayer does not clearly reflect income.  Sec. 446(b); Hallmark Cards, Inc. v. Commissioner, 90 T.C. 26, 31 (1988).  Section 446 imposes a heavy burden on the taxpayer disputing the Commissioner's determination on accounting matters.  Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979).  To prevail, a taxpayer must establish that respondent's determination is "clearly unlawful" or "plainly arbitrary".  Id. However, if the taxpayer's method of accounting is specifically authorized by the Code or the regulations thereunder and has been applied on a consistent basis, the Commissioner is ordinarily not permitted to reject the taxpayer's method, as not providing a clear reflection of income, and require the use of another method.  Hallmark Cards, Inc. v. Commissioner, supra at 31; Peninsula Steel Prods. & Equip. Co. v. Commissioner, 78 T.C. 1029, 1050 (1982).  Furthermore, this Court has held that the Commissioner cannot require a taxpayer to change from an accounting method which clearly reflects income to an alternate method of accounting merely because the Commissioner considers the alternate method to more clearly reflect the taxpayer's income.  Molsen v. Commissioner, 85 T.C. 485, 498 (1985); Peninsula Steel Prods. & Equip. Co. v. Commissioner, supra at

1045; <u>Bay State Gas Co. v. Commissioner</u>, 75 T.C. 410, 422 (1980), affd. 689 F.2d 1 (1st Cir. 1982).

At the outset, we note that the use of the cash method of accounting has a long history of acceptance by the Congress. See sec. 8(g) of the Revenue Act of 1916, ch. 463, 39 Stat. 756, 763 ("An individual keeping accounts upon any basis other than that of actual receipts and disbursements, unless such other basis does not clearly reflect income, may * * * make his return upon the basis upon which his accounts are kept".). Moreover, section 446 specifically authorizes a taxpayer to use the cash receipts and disbursements method of accounting (cash method) to compute taxable income, provided it is the method of accounting the taxpayer regularly uses to compute his income in keeping his books, and it clearly reflects income. Sec. 446(a), (b), (c)(1).

Generally, under the cash method of accounting, an item of income or expense is reported when received or paid without regard to the economic events giving rise to the item. On the other hand, under the accrual method of accounting, an item of income or expense generally is reported for the accounting period during which all the events have occurred which fix the taxpayer's right to receive the item of income or which establish the fact of liability giving rise to the deduction, and the amount thereof can be determined with reasonable accuracy. <u>Hallmark Cards, Inc. v. Commissioner</u>, <u>supra</u> at 32; Secs. 1.446-

1(c)(1)(ii), 1.451-1(a), Income Tax Regs. Thus, each method properly applied to the same facts, may yield different results.

This Court is aware that "By definition, the cash method may result in mismatching between expenses and income where expenses are paid in a year prior to the receipt of the related income." RLC Indus. Co. v. Commissioner, 98 T.C. 457, 493 n.29 (1992), affd. 58 F.3d 413 (9th Cir. 1995). However, mismatches between expenses and income will over time tend to cancel out provided no attempt is made to unreasonably prepay expenses or purchase supplies in advance. Van Raden v. Commissioner, 71 T.C. 1083, 1104 (1979), affd. 650 F.2d 1046 (9th Cir. 1981). Respondent did not contend that petitioner attempted to unreasonably prepay expenses or purchase supplies in advance. Therefore, the fact that expenses and income are mismatched due to ASAP's use of the cash method of accounting, by itself, does not provide support for respondent's determination that the use of the cash method of accounting does not clearly reflect income.

Furthermore, respondent's determination that ASAP's use of the accrual method of accounting would increase its 1990 taxable income by $246,536 is not, per se, indicative that ASAP's use of the cash method failed to clearly reflect income. RLC Indus. Co. v. Commissioner, supra at 503. The best method is not necessarily the one that produces the most tax in a particular year. Id.

Respondent's final argument was that if petitioners are to establish that respondent has abused her discretion in determining that ASAP's use of the cash method of accounting did not produce a clear reflection of income, petitioners must demonstrate substantially identical results between ASAP's method and the method selected by the Commissioner.  We disagree.  Respondent's contention that we must apply the substantial-identity-of-results test in cases where the taxpayer is not required to maintain an inventory is without support in the case law.  Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 377 (1995).

We find that respondent is mistaken in her understanding of the correct application of the substantial-identity-of-results test.  Before the substantial-identity-of-results test can be applied, the Commissioner must determine that the taxpayer is using a method of accounting that does not clearly reflect income.  In certain circumstances we apply the substantial-identity-of-results test to determine whether the method used by the taxpayer clearly reflects income.[5]  Respondent's version of

_____

[5]      The substantial-identity-of-results test is a judicial creation; the test was first articulated in Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352 (1st Cir. 1970), affg. T.C. Memo. 1969-79.  In that case, a cash-method taxpayer who was required to maintain an inventory and thus report income on the accrual basis, argued that the difference in income determined by the method it used and the method selected by the Commissioner was negligible. The Court found that where the Commissioner has determined that the accounting method used by a taxpayer does not
(continued...)

how the substantial-identity-of-results test should be applied

would provide the Commissioner unfettered discretion to change

any taxpayer's method of accounting, including a method which is

in conformity with the Code and regulations, and which clearly

reflects income, to a method selected by the Commissioner, if the

income determined under the taxpayer's method was not

substantially identical in result to the income determined under

the method selected by the Commissioner. We previously have held

that the Commissioner cannot require a taxpayer to change from an

accounting method which clearly reflects income to an alternate

method of accounting merely because the Commissioner considers

the alternate method to more clearly reflect the taxpayer's

income. Molsen v. Commissioner, 85 T.C. 485, 498 (1985);

Peninsula Steel Prods. & Equip. Co. v. Commissioner, 78 T.C. at

1045; Bay State Gas Co. v. Commissioner, 75 T.C. at 422.

_____

[5](...continued)
clearly reflect income, in order to prevail, "the taxpayer must
demonstrate substantial identity of results between his method
and the method selected by the Commissioner." Id. at 356.
    In Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C.
367, 377 (1995), we held that a taxpayer that is required to use
the inventory method of accounting must meet the substantial-
identity-of-results test in order to show that the Commissioner's
determination requiring it to change from the cash method to the
accrual method of accounting was an abuse of discretion.
However, respondent's contention that we must apply the
substantial-identity-of-results test in cases where the taxpayer
is not required to use an inventory is without support in case
law. Id.

Respondent objected to ASAP's use of the cash method, because under that method deductions and revenues were mismatched, which allegedly distorted ASAP's reported income. Respondent's objection is actually a general objection to the cash method of accounting; the mismatching of deductions and revenue is inherent to the cash method. See RLC Indus. Co. v. Commissioner, supra at 493. Respondent did not express any legal argument or proffer any evidence that actually supports her determination that ASAP is required to use the accrual method of accounting. Respondent's argument essentially is that ASAP must change from the cash method of accounting to the accrual method because the accrual method would increase petitioners' taxable income.

Thus, based on the facts of the instant case, including the fact that ASAP has consistently used the cash method of accounting without any evidence that it attempted to prepay expenses unreasonably or purchase supplies in advance, is not required to maintain an inventory, and is not otherwise required by the Code or regulations to use the accrual method of accounting, we find that respondent's determination that ASAP's use of the cash method of accounting did not produce a clear reflection of income was clearly unlawful and plainly arbitrary. In so finding, we also find that respondent's position was not substantially justified. See Mauerman v. Commissioner, T.C. Memo. 1995-237. Furthermore, as it is evident from the Form 886-

A prepared by respondent's revenue agent that the facts of the case were known to respondent prior to the date that the notice of deficiency was mailed, we find that respondent's position was not substantially justified as of all relevant dates.

The Research and Development Issue

Respondent disallowed the $26,676 deduction petitioners claimed for research and development costs for computer software, because petitioners did not establish that they accounted for the costs in a consistent manner as required by section 174. Specifically, respondent determined that in prior years petitioner had capitalized and amortized the costs of computer software; however, in 1990, petitioner expended $26,676 and deducted the entire amount in the year it was paid.

Petitioner contends that the $26,676 paid in 1990 was to develop a unique computer program, created from "scratch". Petitioner claims that the software costs incurred in prior years, which were capitalized and amortized, were not research and development costs, but were incurred to purchase commercially available word processing and spreadsheet programs.

Respondent's position may be incorrect but substantially justified if a reasonable person could think it correct. Pierce v. Underwood, 487 U.S. at 566. Whether respondent acted reasonably on this issue ultimately turns on the facts available to her which formed the legal basis for the position she took in the deficiency notice and during the litigation. DeVenney v.

Commissioner, 85 T.C. at 930. Thus, the determination of whether respondent was substantially justified in her position turns on when she knew the facts of this issue. Following an Appeals conference, the District Director sent a letter dated September 16, 1993, to petitioner's accountant, Mr. Charles Currie, offering to concede the software issue if petitioner would concede the travel expense issue and the method of accounting issue. The letter states "the settlement offer is reasonable in light of the evidence presented in the case." Neither the letter nor the record indicates what specific evidence the letter may be referring to; however, with no further discussion evident in the record, respondent conceded the software issue on the day of the trial. Thus, we conclude that respondent knew the facts of this issue before the notice of deficiency was mailed. Accordingly, we find respondent was not substantially justified in her position on this issue.

Issues Conceded by Petitioner

Petitioners concede the $14,842 travel expense issue, and Hashimoto concedes that he was not an innocent spouse. As petitioners are not the prevailing party on these issues, we shall not award petitioners reasonable litigation or administrative costs with respect to either of these issues.[6]

---

[6] Hashimoto's motion for litigation costs was limited to his expenditure for representation in the innocent spouse issue. Accordingly, we do not award any costs to him.

Issue 2.  Reasonable Costs

Recovery of Administrative Costs

Administrative costs are those costs incurred in connection with an administrative proceeding within the Internal Revenue Service.  Sec. 7430(a)(1), (c)(5).  Section 7430, for present purposes, limits recoverable administrative costs to those incurred on or after the date of notice of deficiency and up to the time the petition was filed.  Sec. 7430(c)(2); see Huffman v. Commissioner, 978 F.2d at 1145.

The statement of the specific litigation and administrative costs for which petitioners claim an award indicates that the costs were incurred after the petitions to the Tax Court were filed. Thus, none of the costs claimed by petitioners are for reasonable administrative costs.

Recovery of Litigation Costs

Petitioner seeks recovery of litigation fees and costs of $32,983.10 that were incurred after the petitions were filed.  We must decide whether the miscellaneous costs, the number of hours billed, and the rate at which those hours were billed are reasonable as claimed by petitioner.

A.    Attorney's Fees

Petitioner submitted a statement claiming $8,188 of attorney's fees for her own time billed at an hourly rate of $125.  These fees are not allowed.  Section 7430(c) operates to cover actual expenditures made with regard to representation.

Thus, a pro se petitioner cannot recover fees for self-representation, even if she is an attorney at law. United States v. McPherson, 840 F.2d 244 (4th Cir. 1988); Frisch v. Commissioner, 87 T.C. 838 (1986).

Petitioner submitted an itemized statement from her attorney reflecting costs incurred from July 11, 1995, through September 5, 1996. Britt billed his time at an hourly rate of either $150 or $200.

Section 7430(c)(1) defines reasonable litigation costs in part as reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding. Section 7430(c)(1)(B)(iii) limits the hourly rate for attorney's fees to $75, with allowances for increase in the cost of living and other special factors. An issue exists as to whether the cost of living adjustment (COLA), which applies to an award of attorney's fees under section 7430, should be computed from October 1, 1981, or from January 1, 1986.

Our position on this issue was addressed in Bayer v. Commissioner, 98 T.C. 19 (1992), where we concluded that Congress, in providing for cost of living adjustments in section 7430, intended the computation to start on the same date the COLA's were started under the Equal Access to Justice Act (EAJA), Pub. L. 96-481, secs. 201-208, 94 Stat. 2321, 2325-2330; i.e., October 1, 1981. Id. at 23. Citing Lawrence v. Commissioner, 27 T.C. 713 (1957), revd. on other grounds 258 F.2d 562 (9th Cir.

1958), we stated that we would continue to use 1981 as the correct year for making the COLA calculation, unless the Court of Appeals to which an appeal would lie had held otherwise. Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

This case is appealable to the Court of Appeals for the Eleventh Circuit, which has not addressed the question of whether 1981 or 1986 is the correct date for purposes of calculating the COLA adjustment under section 7430. Swanson v. Commissioner, supra at 100-101. Accordingly, we shall continue our holding in Bayer, and find October 1, 1981, to be the applicable date from which to make the adjustment. Id.

We use the Consumer Price Index of All-Urban Consumers (CPI-U) published by the U.S. Department of Labor, Bureau of Labor Statistics to adjust the $75 hourly limit for increases in the cost of living. We award petitioner attorney's fees at an hourly rate not to exceed $125.74 for 1995 and $129.46 for 1996.[7]

1. 1995

We find that certain charges for attorney's fees, as itemized in the statement submitted by petitioner, are not reasonable litigation costs. Petitioner's attorney billed 3.8 hours between January 31 and February 3, 1995, for the

---

[7] The index for the 1982-1984 CPI-U is 100. The CPI-U index is 90.9 for 1981, 152.4 for 1995, and 156.9 for 1996. Thus, the maximum hourly rate is $125.74 (152.4/90.9 * $75) for 1995, and $129.46 (156.9/90.9 * $75) for 1996.

preparation of a motion for summary judgment.  The record does not show that petitioner filed a motion for summary judgment, nor does it explain why petitioner's attorney would have devoted time to the preparation of such a motion.  Thus, we shall not award fees for these hours.  In addition, two charges appear, 0.9 hours for October 4, 1995, and 0.1 hours for November 28, 1995, relating to appointments that petitioner did not keep with her attorney.  We do not award fees for these hours.  Finally, petitioner was not the prevailing party on the travel expense issue.  This issue was a relatively simple matter of whether petitioner could substantiate her travel deductions by adequate records as required by section 274.  This issue was not addressed in petitioner's trial memorandum, nor is there any specific reference in the itemized statement petitioner received from her attorney concerning how much time he spent on it.  Considering its simplicity, we find that 3 hours would be a reasonable amount of time to spend on this issue.  The petitioner may not claim litigation costs for this time.  Petitioner submits a claim for 7.1 hours (not including the excluded hours) incurred in 1995. We find this amount to be reasonable.  Petitioner's counsel billed an additional 9.2 hours for "Professional Services" but presented no detailed explanation for the services provided.  We do not award fees for these hours.  Rule 231(d); Bode v. United States, 919 F.2d 1044, 1047-1048 (5th Cir. 1990).

2.  1996

Petitioner's attorney billed her for 69.8 hours for 1996. Except for the following hours, we find this amount to be reasonable. Britt charged petitioner for 0.4 hours on January 16, 1996, for filing a motion to withdraw. Britt did not actually withdraw, and he appeared at trial to represent petitioner. He also billed her for 0.9 and 0.8 hours, on June 21 and July 5, 1996, respectively, for hours relating to his own motion for fees. On September 16, 1996, Britt attempted to file a lien in the amount of $10,839 for services rendered to petitioner upon any award of attorney's fees or cost of litigation in her case. We ordered the lien returned to Britt, since this Court does not collect any money or disburse it to parties. When the case was settled, Britt was no longer the attorney for petitioner, and petitioner filed the motion for reasonable litigation and administrative costs pro se. Thus, we find that the costs for his motion to withdraw and his motion for fees are not reasonable litigation costs.

B.  Miscellaneous Litigation Costs

The itemized billing shows $42 for parking and mileage, $37 for copying costs, $30 for messenger services, $31 for visual displays, and $471 for transcripts. We find these amounts to be reasonable.

C.    Expert Witness Costs

Petitioner claims a total of $3,413 for the costs of expert witnesses.  Section 7430(c)(1)(B) provides the term "reasonable litigation costs" includes the reasonable expenses of expert witnesses in connection with a court proceeding, except that no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States.  Sec. 7430(c)(1)(B)(i).

Petitioner submitted copies of itemized bills from Charles Currie, Jr. (Currie), a certified public accountant, and Louis Vinson (Vinson), an accountant, and Ed Moyer (Moyer), Director of Patient Care at Emory Adventist Hospital, for $1,360, $1,800, and $128, respectively.  Currie prepared petitioners' income tax returns (Form 1040), and the income tax returns (Form 1120-S) for ASAP, for 1988 through 1993.  At trial, Currie testified about the accounting method used by ASAP, and its business operations. Vinson prepared ASAP's 1120-S return for 1994, analyzed ASAP's tax returns for previous years, and testified at trial regarding the accounting practices of small service-based businesses. Moyer testified as an expert on the business practices of hospitals that contract with nursing agencies to meet their temporary staffing requirements.  Although Moyer did not submit a written report, we allowed him to testify as an expert with respect to industry practice.  Rule 143(f)(2).  We find these

expert witnesses' fees to be reasonable, and they are awarded to petitioner.

Petitioner seeks reimbursement for $125 paid to Susan Anderson (Anderson), a staff nurse who did business with ASAP from 1993 through 1995. Anderson testified as a witness at trial; however, her testimony was not relevant because she had no relationship with ASAP for the year at issue. Thus, we find the costs claimed for Anderson's services are not reasonable litigation costs.

D.    Legal Research Costs

Petitioner submitted an itemized statement from Stephen Joseph (Joseph) for legal research he performed on October 19, 1995, and April 8 through April 11, 1996. The invoices indicate Joseph has a J.D. degree and that he charged petitioner for a total of 20 hours at an hourly rate of $50 to research the method of accounting issue. This Court has awarded fees for paralegal and law clerks and for LEXIS computer research. Powers v. Commissioner, supra at 493. In Powers v. Commissioner, supra, we determined an hourly rate of $50 was not unreasonable for a paralegal. Accordingly, we allow $1,000 for legal research costs.

E.    Interest Award

Petitioner claims interest on the amount of the costs she is awarded. The Supreme Court has consistently held that "interest

cannot be recovered in a suit against the Government in the absence of an express waiver of a sovereign immunity from an award of interest." <u>Library of Congress v. Shaw</u>, 478 U.S. 310, 311 (1986). There is absolutely no language in section 7430(c)(1) that indicates Congress intended to waive the Government's immunity from interest awards. <u>Miller v. Alamo</u>, 992 F.2d 766 (8th. Cir. 1993). Accordingly, we deny petitioner's request for interest on the award of costs.

Accordingly, we award petitioner attorney's fees in the amount of $10,602, miscellaneous litigation costs of $611, accountant and expert witness fees of $3,288, and research/paralegal fees of $1,000.

<u>Appropriate orders and decisions will be entered.</u>