### Nicholas E. BATULA

v.

### The UNITED STATES of America and Joseph Snively a/k/a Joseph Fleming.

### Civ. A. No. 85–3168.

United States District Court,
E.D. Pennsylvania.

Dec. 29, 1986.

William L. Antheil, III, Diane S. Huda-chek, Doylestown, Pa., for plaintiff.

Robert K. Coulter, Trial Atty., Tax Div. U.S. Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

SHAPIRO, District Judge.

Before the court is plaintiff's motion for attorneys' fees and costs pursuant to 26 U.S.C.A. § 7430 (West Supp.1986). The court has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1346(a) (West 1976 & Supp.1986).

Plaintiff initially filed this action under 26 U.S.C.A. § 6672 (West 1967 & Supp. 1986), to recover internal revenue taxes, costs, and attorneys' fees. The parties subsequently stipulated to the dismissal of the complaint with prejudice on the merits but without prejudice to plaintiff's claim for attorneys' fees and costs. An evidentiary hearing on the motion for attorneys' fees and costs was held on July 11, 1986. For the reasons stated below, the motion will be denied.

### Findings of Fact

1. Plaintiff, Nicholas E. Batula ("Batula"), is an adult individual residing at 3847 Buck Road, Huntingdon Valley, Pennsylvania 19006.

2. Batula was one of eight individuals who formed a corporation known as Health Care Linen Systems, Inc. ("HCLS") in November, 1978.

3. At all times relevant to this proceeding, Batula was the owner of ten percent (10%) of the outstanding shares of HCLS.

4. During the period of November, 1978 until October, 1979, Batula held the position of Secretary/Treasurer of HCLS.

5. Under the HCLS By-Laws, the Secretary/Treasurer was responsible for books and records.

6. From November, 1978 to October, 1979, Batula did not at any time exercise control over HCLS bills paid, the amount of those payments, or the corporate books. Batula's "job" was fixing the laundry machines.

7. Checks drawn on the HCLS corporate checking account required the signature of Batula and one other person.

8. By letter dated April 25, 1979, three shareholders of HCLS demanded that Batula, in his capacity as Secretary/Treasurer, "produce all books, records, accounts, cancelled checks, invoices, bills, tax records, correspondence, payroll records, etc., and to have them available for inspection...." (Ex. D–A).

9. On April 30, 1979, HCLS had sufficient funds in its checking account to make full payment of the taxes at issue. On May 2, 1979, $10,000.00 was withdrawn from the corporation's checking account by a check to which Batula was a signatory.

10. In the spring of 1979, Batula sought to terminate his involvement with HCLS. By July, 1979, an initial agreement for the dissolution of HCLS was reached but under the terms of this agreement, Batula remained in business with Joseph Snively ("Snively").

11. A subsequent agreement, executed in December, 1979, provided that Snively would purchase Batula's interest in HCLS; Batula never submitted his resignation as Secretary/Treasurer of HCLS. He went to work for Total Linen Care ("TLC"), a corporation formed by Snively. Batula owned twenty percent (20%) of the TLC shares of stock and served as its Secretary/Treasurer.

12. HCLS failed to make full payment of its Federal Insurance Contributions Act ("FICA") taxes and employee income taxes withheld for the periods ending September 30, 1979, December 31, 1979, December 31, 1980, March 31, 1981, and June 30, 1981. The total deficiency is $5,853.07.

13. A final agreement for dissolution of HCLS was signed on December 6, 1979. In the dissolution agreement, Batula authorized payment of $6,000.00 from the funds of the corporation to Walsh Equipment Co. Inc. ("Walsh").

14. In that agreement, Batula, "with full intent to be legally bound" represented that "all payroll taxes and any and all other tax obligations of Linen have been fully paid." (Ex. D–B).

15. On May 22, 1980, Batula co-signed a check drawn on the HCLS account.

16. Batula filed suit against Snively for failure to make payments provided for under their agreement in New Jersey District Court, Burlington County, Docket No. 1181–6869.

17. On October 22, 1981, an Internal Revenue Service ("IRS") officer, Lillian Ford ("Ford"), interviewed Snively, in the IRS Office.

18. At the October 22, 1981 meeting, Snively told Ford that HCLS was a one-man corporation and that he was totally responsible "for every phase of non-payment and filing." (Ex. P–B).

19. On October 28, 1981, Ford interviewed Snively again and Snively told Ford that he alone had signed all the HCLS returns.

20. On November 13, 1981, Ford recommended a 100% penalty assessment against Snively.

21. On March 1, 1982, Ford first became aware of the name of Nicholas E. Batula as a result of a signature card received from First Pennsylvania Bank.

22. On March 16, 1982, Ford called Snively who told Ford that he was fully responsible; he claimed not to understand the reasons for proceeding against Batula.

23. On March 18, 1982, Snively called Ford and told her he would make full payment to avoid involving anyone else.

24. By letter dated May 10, 1982, the IRS informed Batula of the withholding tax deficiency, that it proposed to assess a 100% penalty against him as a "responsible person" for willful failure to pay the tax under Internal Revenue Code § 6672, and that the IRS had determined that the corporation had no property with which to satisfy the underlying tax deficiency.

25. On June 25, 1982, IRS revenue officer Ford conducted an informal interview with Batula. During the June 25, 1982 interview, Batula explained his lack of involvement with HCLS since the summer of 1979, and his efforts to terminate his relationship with HCLS. Batula also told the revenue officer that HCLS still had equipment and other assets. Batula explained

to the revenue officer that he was suing Snively and showed her court documents. Ford told Batula that the Government "didn't have the manpower to track down the equipment to which Mr. Batula referred, and that Mr. Batula should try to sell the equipment and turn the proceeds over to the government." (Ex. P–C).

26. Batula refused to sign a Form 4180, "Report of Interview Held With Persons Relative To Recommendation Of 100 Percent Penalty Assessments," prepared by Ford on June 25, 1982.

27. Subsequent to this discussion with the IRS, Batula settled his lawsuit against Snively. HCLS reimbursed Batula for his original investment in the corporation by corporate check in the amount of approximately $2,000 co-signed by Batula.

28. Batula subsequently called Ford and sent her a copy of that agreement.

29. On October 29, 1982, Ford, by memorandum to the Special Procedure staff, recommended that a 100% penalty tax be assessed against Batula.

30. On April 15, 1983, a delegate of the Secretary of the Treasury assessed a 100% penalty pursuant to 26 U.S.C.A. § 6672 (West Supp.1986) against Batula in the amount of $5,853.07, for failure to pay taxes withheld from the wages of the HCLS employees for the third and fourth quarters of 1979, the fourth quarter of 1980 and the first and second quarter of 1981.

31. Batula did not post bond to stay collection of the 100% penalty as provided in 26 U.S.C.A. § 6672.

32. In June, 1983, the IRS levied against Batula's home. On June 14, 1984, Batula paid the IRS the amount of $6,725.00 so that he could use his home lien-free as collateral for a business credit line.

33. On June 4, 1985, Batula filed this action for refund against the United States. The United States in its answer, served August 5, 1985, did not join Snively.

34. On December 4, 1985, Batula fined an amended complaint adding Joseph Snively as a defendant.

35. On December 4, 1985, the United States took Batula's deposition under oath and agreed to concede the instant case on December 5, 1985.

36. By Order dated April 15, 1986, this court entered a default judgment in favor of Batula and against Snively in the amount of $6,725.00 plus costs. Batula also seeks this amount from the government for attorneys' fees.

### Discussion

Batula moves for an award of attorneys' fees and costs incurred in the administrative process and in this civil proceeding under 26 U.S.C.A. § 7430 (West Supp. 1986). He contends that he was a prevailing party, he exhausted his administrative remedies, and the position taken by the IRS at the highest administrative level was unreasonable so that he was compelled to institute this civil litigation and incur costs and fees.

The government admits that Batula was a prevailing party and that he exhausted his administrative remedies but contends that the IRS's position was reasonable during the course of the administrative proceeding and this litigation. The government also argues that Batula is eligible for an award of attorneys' fees under Section 7430 only for those costs and attorneys' fees incurred in the civil proceeding if the government's position in the civil proceeding itself was unreasonable.

Section 7430(a) of the Internal Revenue Code provides *inter alia:*

In the case of any civil proceeding which is—

(1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and

(2) brought in a court of the United States (including the Tax Court and the United States Claims Court),

the prevailing party may be awarded a judgment for reasonable litigation costs incurred in such proceeding.

26 U.S.C.A. § 7430 (West Supp.1986).

To be eligible to recover attorneys' fees under Section 7430, Batula must meet

three requirements. He must be "the prevailing party" in the litigation, 26 U.S.C.A. § 7430(c)(2); he must have exhausted administrative remedies, 26 U.S.C.A. § 7430(b)(2); and he must prove that the government's position in the proceeding was unreasonable, 26 U.S.C.A. § 7430(a)(2). *See generally* H.R.Rep. No. 97–404, 97th Cong., 1st Sess. at 10–16 (1981). If these three requirements are met, the district court may award attorneys' fees in its discretion. *See Feinberg v. United States,* 628 F.Supp. 12 (E.D.Pa.1985).

Batula clearly is the prevailing party and exhausted his administrative remedies. However, Batula is not entitled to an award of attorneys' fees and costs because he has not met his burden of proving that the government's position was unreasonable at any time relevant to this litigation. Because Batula has failed to prove that the United States' position was unreasonable either during the administrative process or during the civil litigation, the court need not reach the issue of whether an award of attorneys' fees can be made when the government acts unreasonably in the administrative process but reasonably in the civil litigation.[1] Neither need the court decide whether attorneys' fees incurred in the administrative process are recoverable under Section 7430.

After HCLS failed to make full payment of its FICA taxes and employee income taxes withheld for the periods ending September 30, 1979, December 31, 1979, December 31, 1980, March 31, 1981, and June 30, 1981, the IRS attempted to collect the deficiency from Snively. (Ex. P–B). The IRS decided to proceed against Snively not only for the tax deficiency but also for a 100% penalty under 26 U.S.C. § 6672 (West 1967 & Supp.1986). Because those attempts were not immediately successful, the IRS decided to proceed against Batula as well. This decision was made notwithstanding Snively's assertion that HCLS was a one-man corporation and that he alone was responsible for every phase of nonpayment and filing. (Ex. P–B).

Section 6672 provides, *inter alia:*

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under Section 6653 for any offense to which this section is applicable.

26 U.S.C. § 6672 (West 1967 and Supp. 1986).

To be liable under Section 6672, two requirements must be met: "(1) the person assessed must have been under a legal duty to collect, account for and pay over the tax; (2) the failure to collect and pay over the withholding taxes on wages paid must have been willful." *Psaty v. United States,* 442 F.2d 1154, 1158 (3d Cir.1971); *see also Sinder v. United States,* 655 F.2d 729, 731 (6th Cir.1981) (citing cases).

The criteria for determining who is a "responsible person" under Section 6672 were articulated by this court in *Datlof v. United States,* 252 F.Supp. 11, *aff'd,* 370 F.2d 655 (3d Cir.1966), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967). The court examined:

---

1. Federal courts have differed in their interpretation of Section 7430. Several courts have read the language of Section 7430 strictly and required the plaintiff to prove that the United States' position in the civil litigation was unreasonable regardless of its administrative position. *See, e.g., Baker v. Commissioner,* 787 F.2d 637, 643 (D.C.Cir.1986); *Feinberg v. United States,* 628 F.Supp. 12, 13–14 (E.D.Pa.1985). Other courts have awarded attorneys' fees if the position of the United States at the highest administrative level was unreasonable even if modified when the matter reached the court. *See, e.g., Powell v. Commissioner,* 791 F.2d 385, 391–92 (5th Cir.1986). These cases rely heavily on an analogy to the attorneys' fees provision of the Equal Access to Justice Act. *See* 28 U.S.C.A. § 2412(d)(2)(D) (West Supp.1986). That provision has been amended by Congress to allow an award of attorneys' fees when an agency position in the administrative proceedings is unreasonable. *See Powell,* 791 F.2d at 392.

a. The contents of the corporate by-laws.

b. The ability of the individual in question to sign checks on the company's bank account.

c. The identity of the individual who signed the Employer's Federal Quarterly Tax Return and the other tax returns of the firm.

d. The payment of other creditors instead of the United States.

e. The identity of the officers, directors, and principal stockholders in the firm.

f. The identity of the individuals who hired and discharged employees.

g. And in general, the identity of the individuals who hired and discharged employees.

252 F.Supp. at 33 (citations omitted). *See also Cooper v. United States,* 539 F.Supp. 117, 120 (E.D.Va.1982), *aff'd,* 705 F.2d 442 (4th Cir.1983). No one of these factors is determinative. *See, e.g., Barrett v. United States,* 580 F.2d 449, 217 Ct.Cl. 617 (1978).

Because Batula was (1) responsible under the corporate bylaws for keeping possession of HCLS's books and records (Ex. D–A); (2) a required signatory of checks drawn on HCLS's checking account (Dep.Tr. at 15); (3) a signatory of checks preferring other creditors over the United States; (4) Secretary/Treasurer of HCLS (Dep.Tr. at 14); and (5) a ten percent owner of HCLS (Dep.Tr. at 13), it was clearly reasonable for the IRS to pursue whether Batula was in fact a "responsible person" within the meaning of Section 6672 through the administrative process. When Snively did not pay the entire tax deficiency, the government was not bound by his view that he was entirely responsible. The government might reasonably share Batula's own doubts as to Snively's credibility. (Dep.Tr. at 26).

The IRS also had sufficient grounds to believe that Batula's failure to pay the taxes may have been willful within the meaning of Section 6672. The courts have clearly defined "willfulness" to include not

only "a deliberate choice voluntarily, consciously, and intentionally made" but also "a reckless disregard of an obvious and known risk that taxes might not be remitted." *Godfrey v. United States,* 748 F.2d 1568, 1577 (Fed.Cir.1984). However, "mere negligence in failing to ascertain a tax delinquency" is insufficient to constitute willfulness as a matter of law. 748 F.2d at 1577. In the circumstances, Batula's signing HCLS's checks that preferred other creditors, including one to himself, made it reasonable for the IRS to investigate whether Batula acted "willfully" rather than negligently in preferring other creditors and failing to assure that the delinquent tax payments were made.

Batula contends that as soon as Snively informed the IRS officer in October, 1981 of Batula's limited role in HCLS, proceedings against him should have ended.[2] However, Batula ignores the crucial fact that he refused to sign a record of the statements he made during his interview on June 25, 1982. Because he refused to be bound by statements he made at that interview, it was not unreasonable for the United States to refuse to end the proceedings at that time.

Batula asserts that the position of the United States was unreasonable because the investigating officer of the IRS had in 1982 the same facts that caused the United States Attorney to concede the case on December 5, 1985. Batula relies on his own negligence as Secretary/Treasurer of HCLS to show that he was not a "responsible person" and did not act "willfully" in failing to ensure that HCLS's tax obligations were met. Batula ignores his past unwillingness to cooperate with the government.

The United States was willing to concede this litigation as soon as it was able to obtain Batula's statements under oath. Batula has failed to meet his burden of proving that the United States' decision to continue the proceedings until his testimo-

**2.** Because the only issue before the court is whether the government's position was "reasonable," the court expresses no view on whether,

had the government not conceded this litigation, Batula could have been held liable under Section 6672.

ny could be obtained under oath was unreasonable. Even if Batula had met his burden of proving that the United States' position was unreasonable, the court might not have exercised its discretion to make an award of attorneys' fees because Batula's refusal to sign a record of statements made in the June 25, 1982 interview hindered the IRS's attempts to resolve this matter promptly. Therefore, Batula's motion for attorneys' fees and costs is denied.

All findings of fact and conclusions of law in this Discussion are deemed incorporated in those sections.

### Conclusions of Law

1. The court has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1347(a)(1) (West 1976 & Supp.1986). Venue is uncontested and the court has personal jurisdiction over the parties.

2. Section 7430 allows a plaintiff who has filed a claim against the United States in connection with the payment of taxes to recover reasonable litigation costs if the plaintiff is the prevailing party, has exhausted his administrative remedies, and proves that the government's position was unreasonable.

3. Batula is the prevailing party and did exhaust his administrative remedies.

4. Batula has failed to prove by a preponderance of the evidence that the United States' position in this litigation was unreasonable. Batula failed to prove by a preponderance of the evidence that the United States' position in the administrative proceedings was unreasonable.

5. Batula is not entitled to an award of attorneys' fees under 26 U.S.C.A. § 7430 (West Supp.1986).