Neil V. LARSEN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–1065T.

United States Court of Federal Claims.

Oct. 10, 1997.

Randolph W. Thrower, Atlanta, GA, for plaintiff. Sutherland, Asbill & Brennan, L.L.P., of counsel.

Mary M. Abate, Department of Justice, Washington, DC, with whom was Assistant Attorney General Loretta C. Argrett, for defendant. Mildred L. Seidman, Chief, Court

of Federal Claims Section, David Gustafson, Assistant Chief, of counsel.

## OPINION

FUTEY, Judge.

This case is presently before this court on plaintiff's application for attorneys' fees and expenses pursuant to Internal Revenue Code, 26 U.S.C. § 7430 (1994) (I.R.C.), and RCFC 81(e). In asserting his entitlement to the claimed fees and costs, plaintiff argues that the position taken by defendant concerning certain tax assessments made against plaintiff was not substantially justified. Maintaining that its position was substantially justified, defendant asserts that no fees or costs should be awarded to plaintiff. In addition, defendant contends that, even if plaintiff is entitled to some fees and costs, the amounts claimed by plaintiff are excessive.

### Factual Background

From 1980 until early 1983, plaintiff worked for Regal Trucking Co. as a Vice-President and Controller. In that capacity, plaintiff's primary duty was to "facilitate and supervise the transition of [Regal's] accounting system from a manual system to a computerized system."[1] Plaintiff also was a signatory on one of Regal's minor checking accounts. Plaintiff left his employment at Regal on or about January 21, 1983. In March 1983, Regal filed a bankruptcy petition. Regal's assets were sold to pay off its creditors.

In early 1986, plaintiff was contacted, via telephone, by United States Internal Revenue Service (IRS) Revenue Officer J.R. Jones regarding Regal's unpaid employment and withholding taxes for the last quarter of 1982 and the first quarter of 1983. Thereafter, Mr. Jones sent plaintiff two IRS forms to complete, a Form 4180 (interview report by IRS investigator), and a Form 2750 (waiver

of statutory period).[2] Both forms were blank. After receiving the forms, plaintiff hired an attorney and referred the matter to him.[3] Plaintiff gave the uncompleted forms to the attorney. The forms were never returned to the IRS.

On April 14, 1986, the IRS imposed a 100% Penalty Assessment of $60,045.76, plus interest, against plaintiff. In recommending the imposition of the penalty, Mr. Jones noted that "[t]he possibility exists that [plaintiff] may have no liability as to 100% pen[alty], but due to fact he refused to sign waiver, he will have option of appellate proceeding."[4] Plaintiff, through his counsel, sent the IRS a letter denying his liability for Regal's unpaid taxes, protesting the assessment, and requesting a hearing to discuss its merits. The assessment was upheld by the Atlanta Appeals Office of the IRS, by letter dated August 13, 1987. Prior to that decision, plaintiff was not afforded an in-person hearing. Instead, the IRS Appeals Officer had a twenty-minute telephone conversation with plaintiff's counsel concerning the matter of the assessment.

Pursuant to an agreement with the IRS, plaintiff began paying monthly installments of $100 toward satisfaction of the assessment. The IRS Collections Division also placed liens on plaintiff's property, and seized plaintiff's income tax refunds and bank accounts. Through such measures, over the course of several years, the IRS obtained approximately $7,500 from plaintiff toward payment of the assessment.

In 1989, plaintiff's former counsel filed two refund requests with the IRS on plaintiff's behalf. Plaintiff received no response to these requests. In April 1993, plaintiff's present counsel requested prompt action on the refund claims filed in 1989, and filed two additional claims for refund covering further payment of the assessments. Plaintiff's

---

1. Plaintiff's Application for Attorneys' Fees and Expenses (Pl.'s App.) at 12.

2. Form 4180, Report of Interview Held With Persons Relative to Recommendation of 100 Percent Penalty Assessment, and Form 2750, Waiver Extending Statutory Period for Assessment of 100 Percent Penalty.

3. Plaintiff retained Mr. Masters, an attorney and certified public accountant, from 1986 to 1991. In 1992, plaintiff hired the law firm of Sutherland, Asbill & Brennan, where Mr. Randolph Thrower has been plaintiff's primary counsel.

4. Pl.'s App., Ex. 15 at 2.

counsel also requested a conference with the IRS to discuss the merits of plaintiff's case. In responding to the letters from plaintiff's counsel, the IRS District Director in Atlanta stated that the assessment had been upheld by the IRS Appeals Office in 1987, and that plaintiff previously had been afforded a conference concerning his claims. By letter dated November 17, 1993, the IRS denied plaintiff's 1993 refund claim relating to the assessments made for the fourth quarter of 1982. Apparently, no action was taken on plaintiff's 1993 refund claim concerning the assessments made for the first quarter of 1983.[5]

On December 13, 1994, plaintiff filed suit in this court for a refund of the amounts he had paid toward satisfaction of the assessment. In his complaint, plaintiff alleged that he was not a responsible person, within the meaning of I.R.C. § 6672, for the collection and payment of Regal's employment taxes. In response, defendant pleaded a lack of information by its attorneys as to the specific facts of the case and generally denied plaintiff's allegations.

Following the deposition of several key witnesses, "at the close of discovery[,] defendant's counsel notified plaintiff's counsel that she intended to recommend that defendant concede the case."[6] Concession of the case was approved by the necessary government officials on April 12, 1996. Defendant formally notified plaintiff of the concession by letter dated April 15, 1996. On August 8, 1996, this court entered judgment for plaintiff in the amount of $7,491.54, plus interest.

Approximately one month later, on September 6, 1996, plaintiff filed an application for attorney fees and costs pursuant to I.R.C. § 7430.[7] In support of the application, plaintiff avers that defendant's position during the administrative proceedings before the IRS and the litigation in this court was not substantially justified because IRS records clearly show that plaintiff was not a responsible person with respect to Regal's tax matters. In response, defendant maintains that both the administrative position of the IRS and the litigation position of the United States Department of Justice (DOJ) were justified. Assuming the correctness of plaintiff's argument, defendant contends that the amounts claimed by plaintiff are excessive. This court heard oral argument on plaintiff's application on June 4, 1997.

### Discussion

I.R.C. § 7430 authorizes the court to grant to a "prevailing party ... reasonable administrative costs incurred in connection with ... administrative proceedings ... and ... reasonable litigation costs incurred in connection with court proceedings." I.R.C. § 7430(a). Attorney fees are included under the statutory definition of reasonable litigation and administrative costs. In order to recover such costs, the moving party must demonstrate that: (1) it exhausted all administrative remedies prior to filing suit; (2) it has not protracted the litigation in any way; (3) it is the prevailing party; and (4) its claimed costs are reasonable. *See Pohl Corp. v. United States,* 29 Fed. Cl. 66, 69 (1993), *appeal dismissed,* 36 F.3d 1110 (Fed. Cir.1994). It is with these conditions in mind that this court considers plaintiff's request for attorney fees and costs.

### I. *Exhaustion of Administrative Remedies*

Pursuant to I.R.C. § 7430(b)(1), a party seeking to recover attorney fees and costs must "exhaust[ ] the administrative remedies available to such party within the Internal Revenue Service." *Id.* Plaintiff asserts that he has satisfied this requirement. In that regard, plaintiff notes that he filed protests and refund requests with the IRS, and sought a hearing before the IRS, in 1986,

---

**5.** This statement is taken from Defendant's Opposition to Plaintiff's Application for Attorneys' Fees and Expenses (Def.'s Opp.) at 14. In his application, plaintiff states that he received a letter in 1994 denying two of his claims, but he does not indicate which two claims. Pl.'s App. at 4. Arguably, both claims were effectively denied by the 1993 letters from the IRS District Director. In any event, any possible discrepancy on this point is irrelevant for purposes of this opinion.

**6.** Def.'s Opp. at 16.

**7.** Plaintiff subsequently filed two amendments to the application.

1989, and 1993. Plaintiff insists that he commenced the action in this court only after the IRS consistently denied his refund requests and refused him an in-person conference.

Defendant responds that plaintiff did not exhaust all available administrative remedies because he did not fully cooperate with Mr. Jones' request for information during the period spanning from January to April 1986. More particularly, defendant asserts that plaintiff failed to complete the Form 4180 sent by Mr. Jones to plaintiff in March 1986. Plaintiff maintains that he complied with all of Mr. Jones' requests for information. In addition, plaintiff argues that Mr. Jones violated IRS procedure by sending plaintiff a blank Form 4180.

In support of its position, defendant cites to *Batula v. United States,* 649 F.Supp. 1526, 1530 (E.D.Pa.1986). In *Batula,* the United States District Court for the Eastern District of Pennsylvania denied the plaintiff's motion for attorney fees and costs based upon the court's determination that the plaintiff had failed to prove that the defendant's position was unreasonable. *Id.* at 1529–31. The court went on to note that, had the plaintiff made this requisite showing, the court still may have denied the award due to the fact that the plaintiff's failure to sign a Form 4180 "hindered the IRS's attempts to resolve this matter promptly." *Id.* at 1531. Such is not the case here. Indeed, *Batula* can be readily distinguished from the present case. Significantly, the plaintiff in *Batula* refused to sign a *completed* Form 4180. *Id.* at 1527. By contrast, plaintiff in the case at bar received a *blank* Form 4180, which he did not sign. The relevance of this distinction becomes apparent upon a brief examination of the purpose ascribed to Form 4180 in the Internal Revenue Manual (IRS Manual).

According to the IRS Manual, Form 4180 is an internal IRS form to be used by investigating IRS officials to document interviews. The IRS Manual specifically instructs IRS investigators on the procedures to be followed in conducting such interviews, as well as the manner in which a Form 4180 is to be utilized. *See* IRS Manual § 5638.4(1) (1993). In relevant part, the IRS Manual states:

(2) Form 4180 is intended to be used as a record of a personal interview with a potentially responsible person. *Form 4180 is not to be given or mailed to the potentially responsible person ... for completion by that person....* After the interview is completed, the potentially responsible person ... will be asked to sign the Form 4180....

(3) [I]f a personal interview can not be arranged, Form 4181 ... may be sent to the individual and returned by mail.

IRS Manual § 5638.4(2)-(3) (emphasis added).

This language from the IRS Manual establishes that defendant, not plaintiff, was obligated to complete the Form 4180. As such, this court does not consider plaintiff's failure to sign and return the blank Form 4180 as a failure to cooperate with the IRS. This court concludes that plaintiff, through his repeated efforts to resolve the assessment matter within the IRS, exhausted all available administrative remedies prior to filing suit here. *See Pohl,* 29 Fed. Cl. at 70–71.

## II. *Unreasonable Protraction of Proceedings*

■ In addition to denying the award of fees and costs to a moving party that has failed to exhaust all available administrative remedies, I.R.C. § 7430(b)(4) rejects such an award where the moving party has unreasonably protracted the administrative or court proceedings in any manner. *Id.* Defendant does not allege, and this court does not find, that plaintiff unreasonably protracted the proceedings in this action either before the IRS or in this court. Accordingly, this statutory requirement does not bar plaintiff's recovery of the claimed fees and costs. *See Pohl,* 29 Fed. Cl. at 73.

## III. *Prevailing Party*

In order to recover fees and costs, the moving party also must demonstrate that it is a "prevailing party." I.R.C. § 7430(a). To be considered a prevailing party, the movant must show that: (1) the United States' position in the proceeding was not substantially justified; (2) the movant has substantially prevailed in respect to either the amount in

controversy or most significant issue; and (3) the movant satisfies timeliness and net worth requirements. I.R.C. § 7430(c)(4)(A); *see Pohl,* 29 Fed. Cl. at 71. Plaintiff asserts that he has met all of these conditions. Defendant challenges only plaintiff's contention that the United States' position was not substantially justified. Nevertheless, this court considers all of the aforementioned conditions in turn.

### A. *Substantially justified position*

■ First, I.R.C. § 7430(c)(4)(A)(i) requires a taxpayer claiming to be the prevailing party to establish that the United States' position was not substantially justified.[8] *Id.* The United States Supreme Court has defined "substantially justified" as meaning " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Commissioner, INS v. Jean,* 496 U.S. 154, 158 n. 6, 110 S.Ct. 2316, 2319 n. 6, 110 L.Ed.2d 134 (1990) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565–66, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)). To satisfy the substantially justified standard, the defendant's position must have a reasonable basis both in fact and in law. *See Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550. The "position" of the United States referred to in the statute is the position taken by the United States: (1) in an administrative proceeding as of the earlier of the date the taxpayer received notice of the decision of the IRS Appeals Office or the date of notice of the deficiency, and (2) in a judicial proceeding. I.R.C. § 7430(c)(7).

■ Based upon its reading of the statute, this court considers separately the position taken by the United States in the administrative proceedings, *and* the position taken by the United States during the course of the

litigation in this court. *See Pohl,* 29 Fed. Cl. at 71; *see also Huffman v. Commissioner of Internal Revenue,* 978 F.2d 1139, 1145–46 (9th Cir.1992); *Austin v. Commissioner of Internal Revenue,* 73 T.C.M. (CCH) 2470, 2473 (1997); *cf. Chiu v. United States,* 948 F.2d 711, 714–15 (Fed.Cir.1991) (discussing similar language in the Equal Access to Justice Act (EAJA)).[9] With respect to the administrative proceedings, this court applies the "substantially justified" standard as of the date of plaintiff's receipt of notice of the IRS's decision of August 13, 1987, upholding the assessments. *See* I.R.C. § 7430(c)(7). Concerning defendant's litigation position, this court considers whether the position taken by defendant in its answer to plaintiff's complaint was substantially justified. *See Huffman,* 978 F.2d at 1148; *see also Eifert v. Commissioner of Internal Revenue,* 73 T.C.M. (CCH) 2736, 2741 (1997); *Austin,* 73 T.C.M. at 2473.

■ At the time plaintiff received notice of the IRS's decision of August 13, 1987, defendant clearly maintained the position that plaintiff was a responsible person within the meaning of I.R.C. § 6672, and that the assessments levied against him were appropriate. In determining whether defendant's administrative position was substantially justified, this court begins "by reviewing the facts reasonably available to [defendant on that date]." *Schlicher v. Commissioner of Internal Revenue,* 73 T.C.M. (CCH) 2501, 2503 (1997) (citing *Huffman,* 978 F.2d at 1148). The information presented to this court demonstrates that the information reasonably available to defendant at that time, and in fact available prior to the assessments, raised valid questions as to the correctness of the decision.[10] For example,

---

**8.** Pursuant to recent amendments to I.R.C. § 7430, defendant now bears the burden of demonstrating that its position was substantially justified. 26 U.S.C.A. § 7430(c)(4)(B) (West Supp. 1997). These amendments, however, apply only to suits filed after July 30, 1996, and are therefore irrelevant for purposes of the present case.

**9.** Although the EAJA and I.R.C. § 7430 differ slightly, the court has held that case law on the EAJA may be instructive in interpreting I.R.C. § 7430, which was promulgated to remedy a gap in the EAJA's coverage of tax suits. *See Colum-*

*bus Fruit & Vegetable Co-op. Ass'n v. United States,* 8 Cl.Ct. 525, 527–28 (1985); *see also Kaufman v. Egger,* 584 F.Supp. 872, 877 n. 1 (D.Me.1984), *aff'd,* 758 F.2d 1 (1st Cir.1985) (finding no dispositive difference between the EAJA and I.R.C. § 7430). This court therefore relies upon EAJA, as well as I.R.C. § 7430, case law in this opinion.

**10.** While the parties seem to agree that the date of plaintiff's receipt of defendant's decision of August 13, 1987, is the operative date for purposes of this court's "substantially justified"

plaintiff had indicated to defendant on several occasions that he was not responsible for Regal's tax matters, a contention seemingly supported by the former president of Regal as early as March 1986. Additionally, in his memorandum recommending the assessments against plaintiff, Mr. Jones himself indicated certain doubts as to plaintiff's liability for Regal's unpaid taxes. The information before this court further shows that plaintiff was no longer employed by Regal at the time the 1983 taxes for which plaintiff was assessed became due. Despite these considerations and plaintiff's submissions to the IRS, the IRS Appeals Officer upheld the assessments. This court concludes that defendant's administrative position was unsupported by substantial evidence and therefore was not substantially justified. *See Powers v. Commissioner of Internal Revenue,* 100 T.C. 457, 472–73, 1993 WL 175413 (1993). In fact, defendant intimates as much in a joint preliminary status report filed with this court on August 28, 1995, where defendant states that "[t]he Internal Revenue Service's administrative file for this case contained virtually no useful factual development." [11] Defendant's statement further supports this court's determination concerning the unreasonableness of defendant's administrative position.

■ As previously indicated, this court considers that defendant took its litigation position as of the date defendant filed its answer to plaintiff's complaint in this court. *See Huffman,* 978 F.2d at 1148. Therefore, to determine whether defendant's litigation position was substantially justified, this court must review the facts reasonably available to defendant at that time. *See Schlicher,* 73 T.C.M. at 2503 (citing *Huffman,* 978 F.2d at 1148). Following the decision sent to plaintiff by the IRS Appeals Officer on August 13, 1987, IRS officials consistently refused to reconsider the reasons for plaintiff's penalty assessment and repeatedly denied him an in-

person conference to discuss the merits of his protests and refund requests. In addition, the IRS Collections Division seized plaintiff's income tax refunds and bank accounts even though plaintiff had agreed to pay the tax assessment in $100 monthly installments. Presumably all of this information was, or at the very least should have been, contained in the administrative file that was compiled by defendant prior to the filing of defendant's answer. In any event, these facts were reasonably available to defendant at that time.

■ Despite the availability of this information, however, it appears that the DOJ took the same position in its answer as the IRS took during the course of the administrative proceedings. Defendant does not contradict this statement. Rather, defendant maintains that its litigation position was substantially justified based upon the presumption, applicable in tax refund suits, that an IRS tax assessment is made correctly. *United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *see also Eli Lilly & Co. v. United States,* 178 Ct.Cl. 666, 372 F.2d 990, 997 (1967). The mere existence of such a presumption is, however, insufficient to provide a basis for a determination that defendant's litigation position was substantially justified. As plaintiff aptly states: "if this 'presumption' were sufficient to render [d]efendant's position reasonable, no plaintiff in any 100–percent penalty refund case could ever recover attorneys' fees." [12] In order to avoid such an undesirable result, "for [defendant's] position to be substantially justified, there must be 'substantial evidence' to support it." *Powers,* 100 T.C. at 472–73 (quoting *Pierce,* 487 U.S. at 564–65, 108 S.Ct. at 2549–50).

This court determines that, at the time defendant filed its answer, defendant lacked sufficient evidence to substantially justify its litigation position. *See id.* Indeed, the information contained in the administrative file should have at least put defendant on notice

---

analysis concerning the administrative proceedings, this court notes that defendant's position also was not substantially justified when the assessments were made against plaintiff.

**11.** Joint Preliminary Status Report (JPSR) at 2, filed with this court on August 28, 1995.

**12.** Plaintiff's Reply to Defendant's Opposition to Plaintiff's Application for Attorneys' Fees and Expenses (Pl.'s Reply) at 15.

that a substantial likelihood existed that the assessments against plaintiff had been made in error. At that time, however, while continuing to maintain the correctness of the assessments, defendant pleaded a lack of information by its attorneys as to the specific facts of the case. Furthermore, defendant does not dispute plaintiff's contention that "[d]efendant did not contact [p]laintiff to request information relating to any material issue in the case ... prior to filing its [a]nswer."[13] Moreover, it appears that defendant made little effort to verify the contents of the administrative file in the more than four months that passed between the filing of plaintiff's complaint and the filing of defendant's answer. In short, although defendant should have been aware of the infirmities of the case as set out in an administrative file that admittedly "contained virtually no useful factual development,"[14] defendant's answer simply "denied all of the substantive allegations made in the [complaint] and thereby permitted this case to proceed." *Eifert,* 73 T.C.M. at 2742. As such, this court concludes that defendant's litigation position was not substantially justified and lacked a reasonable basis both in fact and in law. *See id.; see also Powers,* 100 T.C. at 472–73. This determination is not altered by the fact that defendant later conceded the case. *See Austin,* 73 T.C.M. at 2473 (stating that the fact that the defendant conceded the case is not determinative of the taxpayer's entitlement to costs). In sum, this court is satisfied that defendant's actions and plaintiff's responses thereto demonstrate that the position taken by defendant, at both the administrative and litigation levels, was not substantially justified. *See Pohl,* 29 Fed. Cl. at 73.

### B. *Substantially prevailed*

■ To be considered a prevailing party, I.R.C. § 7430(c)(4)(A)(ii) further requires the taxpayer to show that it prevailed in the relevant proceedings as to the amount in controversy or the most significant issue[s] presented. *Id.* Here, plaintiff contends that

he is the prevailing party because defendant, after conducting discovery, conceded the sole issue in the case, *i.e.,* the matter of plaintiff's liability for Regal's unpaid employment taxes. Defendant does not challenge this statement. This court concludes that plaintiff has substantially prevailed with respect to the most significant issue presented. *See* I.R.C. § 7430(c)(4)(A)(ii)(II); *cf. Pohl,* 29 Fed. Cl. at 70 (determining that the taxpayer substantially prevailed as to the amount in controversy because the defendant conceded the full amount of the claim).

### C. *Timeliness and net worth requirements*

I.R.C. § 7430(c)(4)(A)(iii) poses two additional requirements that the moving party must meet in order to demonstrate that it is the prevailing party. First, the moving party must file the request for fees within thirty days of final judgment. *Id.* (citing 28 U.S.C. § 2412(d)(1)(B) (1986)). Plaintiff filed his application for attorney fees on September 5, 1996, less than thirty days after the entry of judgment, which occurred on August 6, 1996. Thus, his application was timely filed.

To be considered a prevailing party, I.R.C. § 7430(c)(4)(A)(iii) also requires that the movant, as an individual, have a net worth of less than $2 million in order to be eligible for an award of attorney fees. *Id.* (citing 28 U.S.C. § 2412(d)(2)(B) (1986)). Defendant does not challenge plaintiff's assertion that his net worth is less than $1 million. This court therefore determines that plaintiff meets the statutory net worth requirement.

### IV. *Reasonableness*

■ Finally, I.R.C. § 7430 provides only for the recovery of "reasonable" attorney fees and costs. I.R.C. § 7430(a). In that context, the statute caps attorney fees at $75 per hour,[15] with an allowance for a cost-of-living adjustment (COLA) based upon infla-

---

13. *Id.*

14. JPSR at 2.

15. The cap on attorney fees has been raised to $110. 26 U.S.C.A. § 7430(c)(1)(B)(iii) (West Supp.1997). This change, however, applies only to cases filed after July 30, 1996.

tion.[16] I.R.C. § 7430(c)(1)(B)(iii). In the present action, plaintiff seeks to recover attorney fees and costs incurred during both the administrative and litigation phases, as well as during the litigation of plaintiff's application for attorney fees and costs.

In his original application, plaintiff requested $35,991.85 in attorney fees and $1,185.62 in expenses.[17] In calculating the attorney fees, plaintiff initially relied upon counsels' "standard time charges."[18] In his reply to defendant's opposition, however, plaintiff adjusted the hourly rates of his former and present counsel, as well as the hourly rates of present counsel's assistants, to the $75 per hour statutory cap. Present counsel's assistants include a fourth-year associate, a first-year associate, and a summer associate. Defendant asserts that the first-year associate should not receive a COLA adjustment and the summer associate's hourly rate should be downwardly adjusted.

In *Levernier Construction, Inc. v. United States*, 947 F.2d 497 (Fed.Cir.1991), the United States Court of Appeals for the Federal Circuit held that an attorney shall be granted the lower of the attorney's prevailing market rate, or $75 plus COLA. *Id.* at 503. In the present case, the hourly rates of plaintiff's former counsel, present counsel, and present counsel's fourth-year associate exceed the $75 statutory cap plus COLA. Consequently, plaintiff shall receive attorney fees for his former counsel, present counsel, and present counsel's fourth-year associate based upon a $75 hourly rate plus COLA. Applying COLA to the $75 hourly rate, however, would give a higher hourly rate to present counsel's first-year associate than he normally charges. Such a result would be inconsistent with *Levernier*. As such, this court grants plaintiff a $95 per hour rate for the first-year associate, a rate agreed to by plaintiff's counsel during oral argument on plaintiff's application.[19] This court also awards plaintiff a $35 per hour rate for the time of present counsel's summer associate. *See Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir.1987) (equating law student with legal assistant time), *cited in Kunz Constr. Co. v. United States*, 16 Cl.Ct. 431, 439 n. 8 (1989) (approving a $35 hourly rate for paralegal assistance), *aff'd*, 899 F.2d 1227 (Fed.Cir. 1990). During oral argument, plaintiff's counsel indicated his willingness to accept this amount, as well.[20]

Plaintiff also has requested $2,593.10 to cover photocopying, courier, travel, transcript/deposition, court filing, fax, and Westlaw expenses.[21] According to the United States Court of Appeals for the Federal Circuit, the list of expenses in the EAJA is not exhaustive. *Oliveira v. United States*, 827 F.2d 735, 744 (Fed.Cir.1987); *see also PCI/RCI v. United States*, 37 Fed. Cl. 785, 791 (1997). Accordingly, the Federal Circuit assigned a broad definition to the concept of recoverable expenses. *PCI/RCI*, 37 Fed. Cl. at 791 (discussing *Oliveira*). Specifically, the Federal Circuit stated that "the trial court, in its discretion, may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for

---

**16.** Using the Consumer Price Index, plaintiff has calculated the COLA for Atlanta:

| Year | Inflation Factor | Base Rate | Adjusted Rate |
| --- | --- | --- | --- |
| 1994 | 130.75% | $75 | $ 98.06 |
| 1995 | 134.49% | $75 | $100.87 |
| 1996 | 139.04% | $75 | $104.28 |

Pl.'s Reply at 19. Plaintiff calculated the COLA starting in 1986. *Id.* at 18–19. The court has held January 1, 1986 as the correct date to start calculating the inflation factor for a COLA under I.R.C. § 7430. *See Pohl*, 29 Fed. Cl. at 76.

**17.** Plaintiff amended his application to request an additional $7,320.46 in attorney fees and $112.90 in costs. Plaintiff then filed a second amendment requesting an additional $7,299.04 in attorney fees and $1,294.58 in costs.

**18.** Pl.'s App. at 29. In its opposition to plaintiff's application, defendant lists plaintiff's counsels' hourly rates as follows: prior counsel, $100; present counsel, $290; present counsel's fourth-year associate, $145; present counsel's first-year associate, $95; present counsel's summer associate, $75. Def.'s Opp. at 32.

**19.** Transcript at 17.

**20.** *Id.* at 42. In assigning these rates, this court notes that the EAJA does not require the court to maintain proportionality between partner, associate, and paralegal hourly rates. *Kunz*, 16 Cl. Ct. at 439.

**21.** This total includes the amounts claimed in plaintiff's application, as well as the amendments thereto.

trial of the specific case before the court, which expenses are those customarily charged to the client." *Oliveira*, 827 F.2d at 744; *see also PCI/RCI*, 37 Fed. Cl. at 791. Furthermore, "[t]he quantum and method of proof of each allowable expense is discretionary with the trial court." *Oliveira*, 827 F.2d at 744. Applying the reasoning of *Oliveira* here, this court, in its discretion, determines that plaintiff's claimed administrative and litigation costs are reasonable. Such costs are therefore recoverable.

■ In addition, a substantial sum of plaintiff's claimed attorney fees and costs relate to the present dispute over plaintiff's general entitlement to fees and costs. In cases such as this one, other courts have allowed the recovery of reasonable costs incurred during the course of such "fees for fees litigation." *Huffman*, 978 F.2d at 1149. Indeed, "[s]o long as the government's position justifies recovery of fees, any reasonable fees to recover such fees are recoverable." *Id.; see also Powell v. Commissioner of Internal Revenue*, 891 F.2d 1167, 1172 (5th Cir.1990). Accordingly, plaintiff also may recover the reasonable fees and costs incurred during the present "fees for fees litigation."

*Conclusion*

Based upon the foregoing, plaintiff has demonstrated his entitlement to reasonable fees and costs incurred in connection with the IRS administrative proceedings, and reasonable fees and costs incurred in connection with the litigation in this court, including fees and costs incurred in connection with the present "fees for fees litigation." Accordingly, plaintiff's application for attorney fees and expenses is granted, as modified. The costs and fees to be awarded shall be calculated starting from the date of plaintiff's receipt of notice of the IRS's decision of August 13, 1987, upholding the penalty assessment.[22] The parties shall stipulate to the operative date, as well as to the amounts owed to plaintiff, in a report to be filed with the court by November 3, 1997. After said stipulation is filed, the Clerk is directed to enter judg-

ment for plaintiff in the amount agreed upon by the parties. No further costs shall be granted.

IT IS SO ORDERED.

---

22. Although the parties have been unable to amicably resolve the present dispute, despite this court's repeated urging for them to do so, this court is confident that the parties now will be able to agree on these matters in a manner consistent with this opinion.